THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER ASSENATO, Defendant-Appellant.

First District (1st Division)   No. 1—89—2941

Opinion filed December 23, 1991.—Rehearing denied January 8, 1992.

Allan A. Ackerman, P.C., of Chicago (Allan A. Ackerman and Joelle H. Hollander, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Michael J. Monaco, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

A jury convicted defendant, Peter Assenato, of murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1), and the circuit court sentenced him to a 40-year term of imprisonment. He appeals, presenting as issues whether the State proved him guilty of murder beyond a reasonable doubt and whether prejudicial statements made by the prosecutor and certain testimony elicited at trial operated to deny him a fair trial. For the following reasons, we affirm.

The evidence adduced at trial revealed that on December 3, 1987, the body of the victim, Debra Duchetta (Duchetta), was discovered in a puddle of water and blood in a vacant lot near 400 North Racine.

Robert Dieringer, a police evidence technician, investigated the crime scene. Due to the weather conditions, Dieringer was unable to lift any fingerprints from the area. However, Dieringer found a footprint in the mud near the body. The print's total length was approximately 10½ inches and consisted of a small heel and pointed toe.

Dr. Tae An performed the autopsy. Duchetta sustained nine stab wounds and numerous defensive wounds on her hands. Three of the stab wounds were to the neck, two of which lacerated the jugular vein. According to Dr. An, Duchetta died within minutes of receiving these wounds.

The State's principal witness was James Losasso. He and his wife had known Duchetta for three years. On November 28, 1987, Duchetta called Losasso and asked if she could spend a few nights at his house because she and her mother had argued. She later arrived at Losasso's home at 2613 West Superior accompanied by defendant. Losasso had known defendant for five to six weeks before this time. Duchetta and defendant remained at the Losasso home until December 1, 1987. At 8 p.m., Duchetta asked Losasso to call a taxi for her since she had decided to return to her parents' home. The taxi arrived between 8:30 and 8:45 p.m. at which time Duchetta left. Defendant followed her.

Shortly after midnight, defendant returned to Losasso's home and told Losasso that he and Duchetta had argued and that he "had to kill her." Defendant said he "poked" Duchetta, but did not think that she "[got] the message." However, he thought Duchetta had gotten the "idea" after he "poked" her a second and a third time. Defendant pointed to the sleeve of his jacket and told Losasso that Duchetta had gotten blood on him. Defendant wore a dark-colored jacket and muddy cowboy boots at the time.

After recounting the details of the slaying, defendant asked Losasso to call him a taxi. Defendant then asked to use the phone himself. According to Losasso, defendant took the phone into the washroom and made several calls. After finishing his calls, defendant repeated his story to Losasso and told him that he hoped Duchetta was dead.

During this time, the taxi company called Losasso to inform him that no taxis were available. Defendant called his mother and asked her to pick him up. Defendant also phoned his girlfriend. A car arrived for defendant between 1:30 and 1:45 a.m.

On December 2, 1987, Losasso called Albert Vena, a mutual friend of both Duchetta and Losasso, and informed him of what defendant had told him the previous night. Losasso testified that he did not contact police because he was afraid of defendant. Losasso admitted that he initially lied to police regarding defendant's involvement in Duchetta's murder by telling officers that defendant had told him that he had argued with Duchetta in a bar and bloodied her nose. Losasso swore that he told police this because he wanted "to steer police in the right direction" without actually telling them what defendant had said to him. Losasso only told police the truth after Albert Vena told him to do so.

Soltan Ravanmehr, a driver for the Flash Cab Company, arrived at 2613 West Superior at 8:45 p.m. According to his dispatcher, he was to take his fare to Harlem Avenue and Higgins Road. After his arrival at the house, Duchetta and defendant entered his cab. Duchetta appeared to be drunk. She instructed Ravanmehr to go to Harlem Avenue and Higgins Road. After driving one block, defendant told Ravanmehr to turn right. While he was driving, Ravanmehr heard defendant and Duchetta quarreling. Defendant directed Ravanmehr to the 2600 block of Grand Avenue. When they reached the middle of the block, defendant told Ravanmehr to stop in front of a house. Ravanmehr heard Duchetta tell defendant, "okay, you go in and I stay here." However, defendant told Duchetta, "let's go" and pulled her out of the cab by her arm. Defendant took Duchetta into the house and returned to the cab to pay the fare.

Anthony Delulio testified that he has lived in Las Vegas since 1974. During the summer and fall of 1987, he was in Chicago seeking employment and stayed at his uncle's home at Grand and Racine. He knew Duchetta from the neighborhood and dated her several times.

On November 28, 1987, Delulio drove Duchetta to her sister's beauty shop on Grand Avenue. Delulio never saw Duchetta again, but did receive several telephone calls from her over the next few days. On November 29, Duchetta phoned him from Covello's Bar and Grill at 4 p.m. and told him she was staying at Losasso's home, but was planning to go home. The following day, Duchetta phoned him again from Covello's. Delulio told her that if she did not return home, he no longer wanted anything to do with her. On December 1, 1987, a bartender from Covello's called Delulio at a friend's home and informed him that Duchetta was going to meet him at Covello's. Delulio arrived at Covello's around 9 p.m., but Duchetta never arrived. At 11 p.m., Delulio drove to Harlem and North to visit a friend. The friend was

not home so Delulio drove back to his uncle's home, arriving at 11:45 p.m.

Delulio returned to Las Vegas the next day. At 7 p.m., he received a phone call from Albert Vena. After his conversation with Vena, Delulio called Duchetta's mother and told her to call the police. On December 3, Duchetta's sister called Delulio and told him that Duchetta had been murdered. Albert Vena also called Delulio on December 5 and informed him that Duchetta's body had been found.

Chicago police detective Patrick Harrington investigated Duchetta's murder. On December 3, 1987, he visited defendant's home on Taylor Street, but defendant was not there. On December 5, Harrington interviewed Albert Vena. During the interview, Vena called Losasso, and Harrington later questioned him. After an arrest warrant was issued for defendant, Harrington made several attempts to apprehend defendant, but could not locate him.

On January 24, 1988, Lyons police officer Thomas Schaffer arrested defendant for driving without a license. At the station, defendant identified himself as "Michael Lyndon" and produced a motor club card bearing that name. A computer check revealed that no such name existed. When asked again for his name, defendant continued to give false names. Schaffer finally told defendant that he would be fingerprinted if he did not give his real name. Defendant eventually told Schaffer his name and informed him that he was under investigation for murder in Chicago. Schaffer put defendant's name into the computer and learned that an outstanding warrant existed for his arrest.

Lida Molaro testified on defendant's behalf. On December 1, 1987, at approximately 9 p.m., defendant and Duchetta arrived at her home at 2648 West Grand. Duchetta appeared to be intoxicated. She attempted to make several phone calls, but could not dial the phone correctly. Duchetta had dropped a plastic bag containing clothing on her way into the house, and Molaro's young daughter picked it up. As a result, Duchetta cursed at the child, and Molaro subsequently told defendant that Duchetta had to leave. Defendant wanted Duchetta to stay until Molaro's husband arrived so that he could give them a ride home. Molaro, however, insisted that Duchetta leave. Duchetta remained at Molaro's house for approximately one hour and was attempting to contact "Red" at Covello's because she was supposed to meet him there. Duchetta ultimately left the house alone. Molaro's husband arrived 20 minutes later and gave defendant a ride home.

On cross-examination, Molaro stated that she did not want either Duchetta or defendant in her house because both appeared to be inebriated.

## I

Defendant maintains that the State failed to prove him guilty beyond a reasonable doubt because no evidence was presented to corroborate defendant's extrajudicial confession to Losasso and because Losasso, as a former drug user, was an incredible witness.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267; *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.) Upon review, the appellate court's function is not to retry the defendant, but to ascertain whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

■■ ■ The occurrence of an injury or loss and its causation by criminal conduct are termed the *corpus delicti*. (*People v. Furby* (1990), 138 Ill. 2d 434, 563 N.E.2d 421.) Generally, courts have required that the proof of the *corpus delicti* may not rest exclusively on a defendant's extrajudicial confession, admission, or other statement since such statements are regarded as untrustworthy. (*People v. Furby*, 138 Ill. 2d 434.) Accordingly, the prosecution must present evidence independent of defendant's confession that tends to show the commission of the offense and that corroborates the circumstances related in the statement. (*People v. Lambert* (1984), 104 Ill. 2d 375, 378-79, 472 N.E.2d 427.) This corroborative evidence, however, need not establish beyond a reasonable doubt that an offense did occur. *People v. Furby*, 138 Ill. 2d 434.

At bar, defendant's statement to Losasso was adequately supported by the evidence. The autopsy findings of numerous stab wounds corroborated defendant's statement to Losasso in that defendant had remarked that he had "poked" Duchetta several times. Furthermore, defendant told Losasso that he and Duchetta had gotten into an argument. Soltan Ravanmehr testified that Duchetta and defendant were quarreling in his taxi. Finally, Losasso testified that defendant, after stating that he had killed Duchetta, made several phone calls from his home to his mother and to his girlfriend. A phone log introduced into evidence revealed that, on the date and

time in question, defendant's mother's residence was called from Lossasso's house as was defendant's girlfriend's home.

■ Moreover, evidence of flight is admissible as a fact from which the jury may infer consciousness of guilt. (*People v. Miscichowski* (1986), 143 Ill. App. 3d 646, 656, 493 N.E.2d 135.) Defendant, here, fled the area and was not apprehended until two months after the murder. Once arrested in Lyons, defendant attempted to conceal his identity by using several fictitious names because he did not want "to face [Chicago] detectives."

■ ■ Finally, defendant's attack on Losasso's credibility also is meritless. A key witness' testimony is not rendered incredible by prior drug usage. (*People v. Titone* (1986), 115 Ill. 2d 413, 505 N.E.2d 300.) The jury here was aware of Losasso's past yet still found him credible. Matters affecting the credibility of witnesses and the weight to be accorded the evidence are within the province of the jury, and this court cannot substitute its judgment for that of the trier of fact. *People v. Bradford* (1985), 106 Ill. 2d 492, 502, 478 N.E.2d 1341.

The evidence recited above, when taken as a whole in the light most favorable to the State, supports defendant's guilt beyond a reasonable doubt.

## II

■ Defendant argues that he was denied a fair trial because the State was permitted to question Duchetta's stepfather regarding his children and Losasso regarding his credibility. Defendant also maintains that various comments made during the State's opening and closing arguments were prejudicial.

A review of the record reveals that defendant has waived all of these arguments because he either failed to object at trial or failed to raise the issues in his post-trial motion. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Based on the foregoing, defendant's conviction is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.