(No. 68714.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES FURBY et al., Appellees.

*Opinion filed September 26, 1990.—Rehearing denied November 30, 1990.*

437

Neil F. Hartigan, Attorney General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Robert J. Ruiz, Solicitor General, Terence M. Madsen and Jack Donatelli, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle and William L. Browers, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

M. Jacqueline Walther, of Kielian and Walther, and George P. Lynch, both of Chicago, for appellees.

JUSTICE MILLER delivered the opinion of the court:

Following a joint trial in the circuit court of Du Page County, the defendants, James and Thomas Furby, were convicted by a jury of the theft of property exceeding $300 in value, a felony. The defendants were sentenced to 24 months' probation, ordered to perform 50 hours of public service employment, and required to pay about $1,200 in restitution. A divided appellate court reversed the defendants' convictions. (181 Ill. App. 3d 872.) We allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The defendants, who are brothers, were charged by information with the theft of more than $300 in·cash

from the restaurant where they were both employed. The defendants gave investigating officers confessions in which they admitted their participation in the offense. Those statements were introduced into evidence at trial, and the jury found the defendants guilty of the charges. The appellate court reversed the convictions. Relying on the doctrine that a criminal conviction may not rest entirely on an extrajudicial confession (see, *e.g., People v. Willingham* (1982), 89 Ill. 2d 352), the appellate court ruled that the prosecution had failed to present sufficient evidence of guilt independent of the defendants' own out-of-court statements.

The following evidence was presented at the defendants' trial. The complaining witness was James Lawson, who, together with a business partner, owned a restaurant in Downers Grove; the defendants were employed by the restaurant as delivery drivers. Lawson testified that on the day of the theft, November 7, 1985, he left the restaurant between 2 and 3 p.m. to attend to a family matter. He later called the restaurant to say that he would not return until the following morning. The restaurant's manager, Michael Phillips, was to remove the day's receipts from the cash register and lock the money in the upper right-hand drawer of the desk in Lawson's office, together with certain other funds that were normally kept there overnight.

Lawson explained that he generally took the day's cash receipts with him when he closed the restaurant at the end of the day. Usually, the only money left on the premises overnight would be an amount of petty cash and a bank of currency and rolled coins. Lawson said that he would lock the money in the upper right-hand drawer of the desk in his office, which was situated in the rear of the restaurant. The business checkbook and payroll disbursement book were also stored in a drawer on the right-hand side of the desk. No money was kept

in the drawers on the left side of the desk or in the file cabinets located in the office. According to Lawson, the restaurant employees were aware that money was kept in the office desk.

Lawson arrived at the restaurant at 8 a.m. on November 8 and found the office in disarray. Papers were scattered on the floor, the padlock securing the upper right-hand desk drawer was broken, and the drawers on the right-hand side of the desk were empty. The drawers on the left side of the desk and the office file cabinets had not been disturbed, however. There were pry marks on the back door of the building, and the door was cracked. Lawson reported the matter to the Downers Grove police department. At trial, an investigating officer, Michael Riddle, corroborated Lawson's description of the crime scene.

Lawson testified that the cash register tape showed that the restaurant's receipts for November 7 had amounted to $658. In response to the trial judge's inquiry, Lawson stated that when he left the restaurant during the afternoon of November 7, his desk drawer contained "just under $200" in petty cash and an additional $200 in a bank of rolled coins and currency. Lawson thus believed that some $1,058 in cash should have been in his office desk when the restaurant closed on November 7. The money was never recovered, but the missing payroll book was later found in a dumpster behind the building.

Lawson acknowledged at trial that although he signed a criminal complaint charging the defendants with theft on February 3, 1986, he continued to employ them both. Lawson stated that defendant James Furby quit soon after the warrant for his arrest was issued and that defendant Thomas Furby continued to work at the restaurant until August 1986, when he left to attend school.

The defendants gave the Downers Grove police oral confessions concerning their involvement in the present offense, and the statements were introduced into evidence at trial. Sergeant Raymond Byrne testified that he questioned defendant James Furby about the theft on December 18, 1985; Detective Reinhart was also present during the interview, but he was not called as a witness at trial. James Furby told the officers that on the night of November 7, 1985, he, his brother, Thomas Furby, and the restaurant manager, Michael Phillips, devised a plan to stage a burglary at the restaurant and take the day's receipts. James obtained a crowbar and put pry marks on the back door so that the door would appear to have been forced open. Michael then used the crowbar to pry open the desk drawer where the cash was kept. While Michael was removing the money, James scattered some papers on the floor and threw a book of business checks into a dumpster in the alley so that investigators would believe that a burglary had occurred. James, Thomas, and Michael then went to Michael's apartment in Woodridge, Illinois, where they divided the money equally. According to Sergeant Byrne, James stated that he had received no more than $175 or $180 from the theft and asked about the possibility of making restitution to the restaurant.

Sergeant Byrne questioned defendant Thomas Furby on December 27, 1985. Sergeant Kirk Schwabe, who was present during the interrogation, also testified at trial, corroborating Sergeant Byrne's account of the interview. Thomas Furby told the officers that he was at the restaurant around 11 p.m. on November 7, 1985, with James Furby and Michael Phillips. Thomas said that he left shortly after that time but returned around midnight with his brother. Thomas was aware that James Furby and Michael Phillips planned to take the day's receipts from the restaurant office. Thomas said that after the

brothers arrived at the restaurant, he stood in an alley behind the building while James and Michael went inside. About 5 or 10 minutes later, James and Michael emerged from the building, one exiting through the front door and the other through the rear door. All three then went to Michael's apartment and divided the money. At first, Thomas said only that each of them received less than $200 from the theft; when questioned further, Thomas agreed with Byrne that they received about $175 or $180 apiece. According to Sergeant Byrne, Thomas stated that he was given a share of the proceeds so that he would remain silent about the matter. In response to Byrne's inquiry, Thomas said that he would be willing to pay restitution.

Both defendants testified in their own behalf at trial. They denied making the inculpatory statements attributed to them by the police and denied having any part in the commission of the theft. James Furby testified that he began working at the restaurant as a delivery driver in July or August 1985. James said that he was charged with the present offense in February 1986 but that he did not leave his job at the restaurant until June or July 1986, when he lost his driver's license. James explained that he would be given between $20 and $150 in cash at the start of each workday. He would pay the restaurant cashier for the orders he was to deliver and then collect the money from the customers when the deliveries were made. At the end of the day the cashier would count the money he turned in to verify that the amount was correct. James testified that the same procedures were followed after he was charged with the theft. He also said that he was aware that money was kept in Lawson's office desk.

James testified that sometime after the November 7 theft, in response to Sergeant Byrne's request, he appeared at the Downers Grove police station to answer

questions about the occurrence. According to James, Sergeant Byrne said that the police had evidence of James' guilt of the offense. When James stated that he knew nothing about the matter, Byrne repeated the accusation. James said that he was eventually allowed to go home. At trial, he denied making the statements attributed to him by the police.

James explained that although he was not scheduled to work on November 7, he was at the restaurant from around 9:15 to 10 p.m. to get something to eat and to wait for his brother to finish working, because they had planned to go out together. James believed that Michael Phillips was also working at the restaurant that evening. James denied that he was involved in the theft and said that he learned of the crime when he arrived for work on November 8.

Defendant Thomas Furby also testified in his own behalf at trial. Thomas stated that he was employed by the restaurant as a delivery driver from August 1985 until August 1986 and that his job duties did not change following his arrest for the present offense in February 1986. Thomas testified that he was questioned by Sergeant Byrne at the Downers Grove police station on December 27, 1985. According to Thomas, Sergeant Byrne said that James had already confessed to the theft and that there were witnesses who had seen the brothers commit the crime. Thomas denied making the statements attributed to him by Sergeant Byrne and denied having had any role in the offense. At trial, Thomas explained that he and Michael Phillips were working at the restaurant during the evening of November 7, 1985, but that James was not. Thomas said that he left the restaurant around 10 o'clock and did not return that night. Thomas acknowledged that he was aware that Lawson kept money in the desk in the restaurant office.

The jury found the defendants guilty of theft of property exceeding $300 in value. The trial judge sentenced the defendants to 24 months' probation. The defendants were required to perform 50 hours of public service employment as a condition of probation. In addition, the defendants together were ordered to pay Lawson restitution of $1,177.56; that sum represented the restaurant's loss from the occurrence charged here.

The appellate court, with one justice dissenting, reversed the defendants' convictions on the ground that the State failed to furnish sufficient proof of the *corpus delicti*. (181 Ill. App. 3d 872.) The appellate court believed that although the evidence independent of the defendants' confessions may have indicated the occurrence of criminal activity of some sort, the independent evidence did not tend to show the commission of the offense charged and did not corroborate the facts related in the defendants' confessions. In support of its conclusion, the court noted the uncertainty over the amount of cash left in the restaurant at the close of business on November 7, the possibility that the money might have been removed from the premises for legitimate reasons by someone else who had access to the restaurant office, and the absence of any evidence that the defendants were ever in possession of the proceeds of the theft. In light of its result, the appellate court did not consider the other grounds on which the defendants challenged their convictions. The dissenting justice believed that there was sufficient evidence of the *corpus delicti* and thus would have addressed the defendants' remaining allegations of error.

I

Proof of guilt for a criminal offense may be divided conceptually into proof that an injury or loss occurred, that the cause of the loss was criminal in nature, and

that the accused was the offender. (7 J. Wigmore, Evidence §2072, at 524 (Chadbourn rev. 1978).) By common acceptation, the first two components—the occurrence of the injury or loss, and its causation by criminal conduct—are termed the *corpus delicti*; the identity of the accused as the offender, the ultimate issue, is not considered part of the *corpus delicti*. (7 J. Wigmore, Evidence §2072, at 524-25 (Chadbourn rev. 1978); 1 W. LaFave & A. Scott, Substantive Criminal Law §1.4, at 24 (1986); see *People v. Lambert* (1984), 104 Ill. 2d 375, 378; *People v. Taylor* (1974), 58 Ill. 2d 69, 78; *People v. Norcutt* (1970), 44 Ill. 2d 256, 263.) The elements of an offense must, of course, be proved beyond a reasonable doubt. *In re Winship* (1970), 397 U.S. 358, 361-64, 25 L. Ed. 2d 368, 373-75, 90 S. Ct. 1068, 1071-73; *People v. Kirilenko* (1953), 1 Ill. 2d 90, 94.

It is generally held that proof of the *corpus delicti* may not rest exclusively on a defendant's extrajudicial confession, admission, or other statement. (7 J. Wigmore, Evidence §2071 (Chadbourn rev. 1978); E. Cleary, McCormick on Evidence §145 (3d ed. 1984).) Rather, under the rule applied in this State, the prosecution must present evidence *aliunde* the defendant's confession that tends to show the commission of the offense and is corroborative of the circumstances related in the statement. (*Lambert*, 104 Ill. 2d at 378-79; *People v. Dalton* (1982), 91 Ill. 2d 22, 29.) The rule has been expressed as follows:

> "[I]f the independent evidence *tends* to prove that an offense occurred, then such evidence, if corroborative of the facts contained in the confession, may be considered along with the confession in establishing the *corpus delicti*. In such event, the independent evidence need not establish beyond a reasonable doubt that an offense did occur." (Emphasis in original.) *People v. Willingham* (1982), 89 Ill. 2d 352, 361.

The requirement of proof apart from a defendant's own statements reflects a long-standing mistrust of extrajudicial confessions. (*Dalton*, 91 Ill. 2d at 29; Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. Pa. L. Rev. 638, 642-49 (1955).) As the court explained in *Dalton*, "[t]wo reasons for this mistrust have commonly been cited: confessions are unreliable if coerced; and, for various psychological reasons persons 'confess' to crimes that either have never occurred or for which they are not legally responsible." (*Dalton*, 91 Ill. 2d at 29; see *People v. O'Neil* (1960), 18 Ill. 2d 461, 464.) Whatever the precise antecedents of the rule, its value has been questioned. (See *United States v. Kerley* (7th Cir. 1988), 838 F.2d 932, 939-40; *Dalton*, 91 Ill. 2d at 29-30.) In the present case, however, the State does not contend that the rule should be relaxed or dispensed with entirely. We therefore have no occasion to reexamine the requirement here. *Cf. Dalton*, 91 Ill. 2d at 28-29 (though offender's age was element of crime charged, independent corroboration of defendant's extrajudicial statement of own age held unnecessary).

The defendants in the present case were convicted of theft, and, because the property taken exceeded $300 in value, the offense was a felony. The offense of theft may be established by proof that an accused knowingly exerted control over the property of another, with the intent to permanently deprive the owner of its benefit. (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)(1); see *People v. Gordon* (1976), 64 Ill. 2d 166, 170.) At the time of the occurrence charged here, proof of the value of the property taken was not an element of the offense but instead determined whether the crime was a felony or a misdemeanor. (*People v. Jackson* (1984), 99 Ill. 2d 476, 479.) Under current law, the value of the property involved is an element of the offense. (Ill. Rev. Stat. 1989, ch. 38,

par. 16—1(c).) Because the evidence in this case compels the conclusion that, if any sum of money was illegally taken from the restaurant, the amount exceeded the $300 felony threshold, we need not decide whether under former law value was a part of the *corpus delicti.*

The dispute in the present appeal centers on the question whether the State's independent evidence tended to show the occurrence of the theft and was sufficiently corroborative of the defendants' confessions. The State contends that the appellate court erred in holding that the evidence presented at trial did not establish the *corpus delicti* beyond a reasonable doubt. The State maintains that the evidence independent of the defendants' confessions tended to show the commission of the offense charged and that the statements were sufficiently corroborated to warrant their use in determining whether there was sufficient proof of the *corpus delicti.* The State submits that the independent evidence and confessions were sufficient to establish the *corpus delicti* beyond a reasonable doubt against each defendant.

The appellate court held that the independent evidence presented by the State did not tend to show the occurrence of the crime and did not adequately corroborate the defendants' confessions. The appellate court ruled that the trial court had improperly admitted Lawson's testimony that the restaurant cash register showed a sales total of $658 for the day of the theft. The appellate court believed that the remaining competent evidence failed to satisfy the *corpus delicti* requirement because it did not tend to show the occurrence of the crime and did not sufficiently corroborate the defendants' confessions.

·The State contends that any error in the admission of the testimony concerning the cash register readout was waived because the defendants failed to make a specific

objection to its introduction and did not later raise the matter in their post-trial motions. At trial, defense counsel objected to the testimony on the general ground that it lacked a proper foundation. The trial judge overruled the objection, stating, "I am unaware of what other[,] further foundation might be necessary." The defendants did not later raise any objection to the testimony in their post-trial motions.

As presented by the State, the evidence concerning the cash register readout was vulnerable to two separate objections. First, Lawson's testimony concerning the figure was not in conformity with the original writing, or best evidence, rule, and no attempt was made to demonstrate that the original document was missing. Second, the figure shown on the register readout itself would be hearsay (see *People v. Holowko* (1985), 109 Ill. 2d 187), and its admission would then depend on compliance with the business records exception to the hearsay rule (see Ill. Rev. Stat. 1987, ch. 38, par. 115—5). These are distinct objections: production of an original writing does not guarantee the document's admission if some further evidentiary hurdle must be overcome, and a writing that is itself hearsay will be inadmissible unless a hearsay exception is also satisfied. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §1001.1, at 743 (5th ed. 1990); see *Kerbis v. Kerbis* (1976), 38 Ill. App. 3d 866, 872 (party's objection to admission of slip of paper as violation of original writing rule not sufficient to also raise noncompliance with business records exception).) In the present case, although defense counsel's objection did correctly intimate that appropriate grounds for admission of the testimony were missing, counsel's objection on foundation grounds failed to pinpoint either of the two defects we have discussed.

But even if it is assumed that the defendants' foundation objection was sufficient to highlight those problems,

or at least to prompt the trial judge to press defense counsel for a more precisely stated objection, we would still consider the matter waived, for the defendants failed to raise the objection in their post-trial motions. Ordinarily, an issue omitted from a post-trial motion is deemed waived for purposes of review. (*People v. Fields* (1990), 135 Ill. 2d 18, 49; *People v. Enoch* (1988), 122 Ill. 2d 176, 185-86.) And contrary to the defendants' argument, we do not consider that admission of the testimony was plain error. (See 107 Ill. 2d R. 615(a) (on review of a criminal case, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court"); *People v. Sanders* (1983), 99 Ill. 2d 262, 273 (plain-error rule properly applied when error might have altered outcome of factually close case or, alternatively, when error denied defendant fair trial).) As we explain below, the evidence apart from the challenged testimony sufficiently established the *corpus delicti*, and the alleged error did not deny the defendants a fair trial.

The determination whether there is sufficient independent proof of the *corpus delicti* will be judged by the particular circumstances of the case. (See *People v. Millard* (1938), 370 Ill. 214, 218.) We agree with the observation of the dissenting justice below that the appellate court majority effectively imposed on the prosecution the unnecessary burden of establishing a chain of custody for the money Lawson had in his office desk the afternoon preceding the theft. (181 Ill. App. 3d at 883 (Lindberg, J., dissenting).) As applied in this State, the *corpus delicti* rule requires only that the evidence apart from the defendant's confession tend to show that a crime was committed; the independent evidence need not establish the crime beyond a reasonable doubt. (*People v. Willingham* (1982), 89 Ill. 2d 352, 362; *People v. Perfecto* (1962), 26 Ill. 2d 228, 229.) By the same token, it was

not necessary here that the independent evidence disprove every possibility, other than theft, that might have explained the disappearance of the cash.

The evidence independent of the defendants' extrajudicial confessions tended to prove the commission of the offense charged. The independent evidence showed that Lawson had nearly $400 in cash in the upper right-hand drawer of his desk when he left the restaurant during the afternoon of November 7, 1985; later, the day's receipts of approximately $658 should have been added to the drawer. When Lawson returned to the restaurant the following morning, the padlock on the upper right-hand drawer was broken and the drawers on the right side of his desk were empty; the money normally left in the desk was gone, and the payroll book, which Lawson kept in a drawer on the right side of his desk, was also missing. Papers had been scattered on the floor of the office, and there were pry marks on the back door of the building. These circumstances, which are independent of the defendants' statements to the police, tended to show that a theft occurred. *Cf. People v. Bennett* (1987), 152 Ill. App. 3d 762 (reversing theft conviction on *corpus delicti* grounds because of absence of independent evidence of amount of money originally contained in bundle of currency marked $100 but later determined to contain lesser sum; court also noted access of others to place where money was kept, and discrepancies between amount defendant admitted taking and amount thought to be missing).

We also conclude that the independent evidence corroborated the circumstances related in the defendants' confessions. There is no requirement that the independent evidence and the details of the confession correspond in every particular. (See, *e.g., People v. Willingham* (1982), 89 Ill. 2d 352, 363 (where sufficient corroboration found despite certain discrepancies be-

tween independent evidence and facts related in confession).) What is necessary are facts or circumstances " 'independent of the confession, and consistent therewith, tending to confirm and strengthen the confession.' " *People v. Lueder* (1954), 3 Ill. 2d 487, 489, quoting *Bergen v. People* (1856), 17 Ill. 426, 429.

The scene discovered by Lawson and the investigating officer corresponded to the events described by the defendants in their confessions, indicating that the offense was committed in the manner stated by the defendants. Lawson found that the left-hand desk drawers and the file cabinets in the office had not been disturbed, and at trial he explained that money was not kept in those places. It appeared, then, that the offense was committed by persons who were familiar with the operations of the restaurant and knew where the money would be found. The time of the occurrence, the disappearance of the money, and the condition of the premises corroborated a number of circumstances related in James Furby's confession. James told police that he and two other employees were responsible for the November 7 theft; he further stated that, by placing pry marks on the back door and scattering papers around the office, they contrived to make the scene appear as though an outsider had committed a burglary. In addition, James' statement that he discarded a checkbook in a dumpster outside the building was, we believe, corroborated by the evidence that a missing payroll book was recovered there.

We also find that Thomas Furby's statement to police was sufficiently corroborated by the independent evidence presented at trial. Although less detailed than his brother's confession, Thomas' statement related that James and restaurant manager Michael Phillips devised a plan to steal money from the restaurant on the night of November 7, 1985; that Thomas, aware of the plan,

stood outside while James and Michael entered the building; that James and Michael were inside the restaurant for 5 to 10 minutes; and that afterwards the three divided the proceeds of the theft equally. Thomas' statement found sufficient corroboration in the independent evidence concerning the time of the occurrence, the disappearance of the money, and the condition of the premises.

The independent evidence tended to show the commission of the offense and corroborated the defendants' confessions. We may therefore consider the independent evidence together with the defendants' confessions in determining whether the *corpus delicti* has been established. (See *People v. Willingham* (1982), 89 Ill. 2d 352, 360.) As we explain more fully below, we conclude that the present record contains sufficient proof of the *corpus delicti*, and of the defendants' identities as the offenders.

## II

Assuming that the *corpus delicti* requirement has been met, the defendants also argue that reversal of their convictions is warranted because the evidence as a whole failed to prove their guilt of the offense beyond a reasonable doubt. This alternative contention was among several issues that were raised but not decided in the appellate court, which rested its judgment entirely on the resolution of the *corpus delicti* issue. Before this court, the parties have fully briefed the reasonable doubt question. Though the cause must still be remanded to the appellate court for review of several additional issues, which have not been briefed here, in the interest of judicial economy we shall now consider the defendants' challenge to the sufficiency of the evidence. (See *People v. Reid* (1990), 136 Ill. 2d 27, 54; *People v. Berland* (1978), 74 Ill. 2d 286; 310-11.) It should be noted that there is

no requirement that we exclude improperly admitted evidence in determining the sufficiency of the proof of guilt. (*Lockhart v. Nelson* (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285.) Thus, it is no impediment to our current review that we do not have before us the defendants' remaining allegations of error.

The defendants contend that a number of circumstances demonstrate that their guilt of the offense was not proved beyond a reasonable doubt. The defendants note that several other persons, including Lawson's wife, Lawson's business partner, and the restaurant manager, had access to the restaurant office and could have removed the cash from the premises for legitimate reasons. The defendants also cite the discrepancy between the amount of money shown by the State's evidence to have been on the premises at the time of the theft and the amount indicated in the defendants' confessions. It appeared from Lawson's testimony that nearly $1,100 should have been in the restaurant office at the close of business on November 7. The defendants said in their confessions, however, that they and the third person implicated in the matter, Phillips, each received equal shares approximating $180, which would indicate that only $540 was taken from the restaurant.

Furthermore, the defendants challenge the strength of the evidence of their confessions. At trial, the defendants denied making the statements attributed to them by the police, and the defendants contend that the testimony detailing their statements lacked credibility. In this regard, the defendants note that the second police officer who was present during the interrogation of James Furby was not called to testify at trial, and that after James was interrogated, the officers waited more than a week before questioning Thomas Furby. In addition, the defendants point to the evidence that Lawson did not terminate either defendant's employment, even after he

signed the criminal complaint charging them with the present offense. The defendants infer from that circumstance that Lawson himself did not actually believe that the defendants were responsible for the theft.

A reviewing court will not set aside a conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261; *People v. Williams* (1982), 93 Ill. 2d 309, 315; *People v. Vriner* (1978), 74 Ill. 2d 329, 342.) As we have previously stated, "It is not our function to retry a defendant when considering a challenge to the sufficiency of the evidence of his guilt. (*Collins*, 106 Ill. 2d at 261.) Rather, determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. (*People v. Brisbon* (1985), 106 Ill. 2d 342, 360.)" (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43.) " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *** 'Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' (Emphasis in original.)" *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

Applying those principles to the case at bar, we conclude that the evidence is sufficient to sustain the defendants' convictions. The defendants, in their confessions, admitted their participation in the offense charged; additional evidence confirmed the defendants'

accounts of the manner in which the crime was committed. The jurors were made aware of the circumstances under which the defendants gave their statements, as well as the circumstances surrounding the defendants' continued employment at the restaurant. It was the jury's function to resolve the conflicting testimony. (*People v. Young* (1989), 128 Ill. 2d 1, 51.) The jurors were free to credit the testimony of the investigating officers, to accept as true their accounts of the defendants' interrogations, and to accept as true the contents of the statements themselves. Viewing all the evidence in the light most favorable to the State, we cannot say that the defendants were not proved guilty beyond a reasonable doubt.

Defendant Thomas Furby was tried on the present charge as an accomplice, and he raises the further argument that the evidence failed to establish his accountability for the offense. He asserts that the record at most establishes his presence at the crime scene and his subsequent awareness of the commission of the offense. Thomas concludes that those circumstances are not an adequate basis for accomplice liability.

An accused may be accountable for the conduct of another person if, "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).) Although mere presence at the scene of an offense is not by itself sufficient to sustain a conviction on an accountability theory (*People v. Reid* (1990), 136 Ill. 2d 27, 61; *People v. Ruiz* (1982), 94 Ill. 2d 245, 256), an accused may be deemed accountable for acts performed by another pursuant to a common plan or purpose (*People v. J.H.* (1990), 136 Ill. 2d 1, 17; *People v. Allen* (1974), 56 Ill. 2d 536, 541).

In the present case, Thomas Furby's statement to the police showed that he knew in advance of the planned theft, that he was present during the commission of the offense, and that he shared equally in the division of the proceeds. Although Thomas insisted in his statement that he was given the money so that he would remain silent about the matter, the jury was free to infer from the attendant circumstances that Thomas was in fact a participant in the scheme and that he received a portion of the proceeds for having served as a lookout. (*Cf. People v. Morgan* (1977), 67 Ill. 2d 1, 9 (defendant's receipt of proceeds of robbery supports inference of his participation in offense).) While accountability is not limited to instances in which the offense charged is committed in accordance with a preconceived plan (see *People v. Perez* (1985), 108 Ill. 2d 70, 82-83; *People v. Tyler* (1979), 78 Ill. 2d 193, 196-97), such circumstances are, of course, an adequate ground on which to base a finding of guilt (see *People v. Ruiz* (1982), 94 Ill. 2d 245, 255-56). We therefore conclude that the evidence was sufficient to sustain Thomas Furby's conviction.

## III

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Du Page County is affirmed. Because of its resolution of the action, the appellate court did not consider several additional issues raised by the defendants on appeal. We therefore remand the cause to the appellate court for further proceedings not inconsistent with this opinion.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*