THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY HINTON, Defendant-Appellant.

Fourth District No. 4—93—0326

Argued November 16, 1993.—Opinion filed March 10, 1994.

George C. Pontikes (argued) and Darlene A. Blaszczak, both of George C. Pontikes & Associates, of Chicago, for appellant.

John Turner, State's Attorney, of Lincoln (Norbert J. Goetten, Robert J. Biderman, and Beth McGann (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

After a jury trial, defendant was convicted on three counts of the unlawful practice of dentistry. (Ill. Rev. Stat. 1991, ch. 111, par. 2338.) Defendant was sentenced to 12 months' supervision, fined $250, and ordered to pay $390 restitution to the Illinois State Dental Society. Defendant appeals, challenging the sufficiency of the information and the evidence to support the convictions. We affirm.

Most of the evidence in this case resulted from an investigation conducted by Dennis Conover, a private investigator hired by Dr. Robert Dahman, a dentist in Lincoln, Illinois. Dahman was reimbursed by the Illinois State Dental Society for the payments he made to Conover. On June 10, 1991, Conover, as instructed by Dahman, contacted defendant to make an appointment to have dentures made. Conover testified that when he called defendant, he asked for Dr. Gary Hinton, and defendant responded that he was Dr. Hinton. Defendant testified that he identified himself simply as "Gary." During this telephone conversation, an appointment was made for June 13, 1991.

On June 13, 1991, at approximately 12 noon, Conover arrived at defendant's home and place of business in Lincoln, Illinois. Conover brought with him Michael Seward, who videotaped people who came or left defendant's place of business. Conover asked defendant if he was Dr. Hinton, and defendant said he was. Conover identified himself as Robert Ledbetter (an alias) and said he needed a new set of dentures quickly. At this time, an older man was also at defendant's offices. This man was later identified as Dr. Ernest Brinkman. Dr.

Brinkman is an associate of defendant, who defendant claims supervises him and is responsible for his treatment of patients. During this first visit, defendant put two steel plates in Conover's mouth, then removed them.

Conover testified that during this first visit Brinkman was in the kitchen at the beginning of the appointment. Brinkman came into the treatment room when Conover said he was from Pekin. Brinkman briefly discussed the likelihood of a prison being built in Pekin. Shortly after this conversation, while Conover was still being treated, Brinkman told defendant he was going to check his mail. Brinkman then left the premises. His departure was videotaped by Conover's associate. Defendant testified that Dr. Brinkman was at the office when the procedure began and instructed defendant to make diagnostic casts.

According to Conover's testimony, after Dr. Brinkman left defendant mixed up some chemicals to make an impression of Conover's mouth. Defendant then proceeded to make the impression while Dr. Brinkman was absent from the premises. Defendant and Conover then agreed to set another appointment for June 18, 1991.

When Conover and Seward returned on June 18, 1991, they noticed the car Dr. Brinkman left in on June 13 was not in the parking lot. When Conover entered defendant's place of business, he asked defendant if there was anyone else in the building, and defendant said "no." During the visit, defendant put a wax "try-in" denture into Conover's mouth to see whether it would fit. Conover testified Dr. Brinkman was not then present. Dr. Brinkman, however, testified he was at the office on this occasion and his car was not in the lot because he was having his brakes repaired. Defendant as well testified that Dr. Brinkman was at the office for the second appointment. Defendant and Conover then made an appointment for June 21, 1991, to exchange $390 for the new dentures.

Before the June 21 meeting, Conover went to Dr. Dahman's office and was given $400 with which he was to purchase the dentures from defendant. When Conover and Seward arrived at defendant's office on June 21, 1991, Dr. Brinkman's car was not present. Conover received the dentures and paid defendant $390, then asked for a receipt. After searching, defendant gave Conover the requested receipt. Dr. Brinkman again testified that he was at the office on this third occasion.

The information gathered by Conover was given to the State's Attorney for Logan County. On December 18, 1991, a three-count information was filed against defendant charging him with unlawful practice of dentistry on June 13, 18, and 21, 1991, the days Conover

visited defendant's office. After hearing the testimony of Conover, defendant and Dr. Brinkman, the jury found defendant guilty on all three counts. On March 12, 1993, defendant was sentenced and this appeal followed.

Defendant first argues the information was defective. The information charged defendant with violating section 38 of the Illinois Dental Practice Act (Act) (Ill. Rev. Stat. 1991, ch. 111, par. 2338), and identified the acts which constituted the unlawful practice of dentistry by stating that the defendant, without a dental license:

"[I]ntentionally took impressions of the upper and lower jaws of Dennis Conover for the purpose of making dentures for Dennis Conover.

\*\*\* [I]ntentionally performed an operation incident to the replacement of teeth by means of dentures in that he placed wax denture impressions of the mouth of Dennis Conover into Dennis Conover's mouth in order to check the fit of the wax dentures prior to making the actual dentures.

\*\*\* [I]ntentionally furnished to Dennis Conover prosthetic dentures which are substitutes for natural teeth in return for the payment of United States currency."

Defendant argues the information is deficient because it fails to cite a statutory provision which prohibits the conduct described. Therefore, the information fails to comply with section 111—3 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 111—3). Defendant argues that while the information alleges a violation of section 38 of the Act, that is not sufficient as section 38 simply states that any person who practices dentistry without a license is guilty of a Class A misdemeanor. Defendant argues that by failing to cite a specific section of the Act that was violated, the State failed to apprise the defendant of the crime charged sufficiently to allow him to prepare a defense.

When an information is initially attacked by a motion in arrest of judgment, the question is not whether it strictly complies with section 111—3 of the Code, but whether it complies with section 116—2 of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 116—2). Subsection (c) of section 116—2 states as follows:

"A motion in arrest of judgment attacking the indictment, information, or complaint on the ground that it does not charge an offense shall be denied if the indictment, information or complaint apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution out of the same conduct." Ill. Rev. Stat. 1991, ch. 38, par. 111—3(c).

When the sufficiency of an information is attacked in a motion in

arrest of judgment the standard of review is the same as when the information is first attacked on appeal, and strict compliance with section 111—3 of the Code is not required. (*People v. Hughes* (1992), 229 Ill. App. 3d 469, 471-72, 592 N.E.2d 668, 669.) The charges here, when read in their entirety, were sufficient to enable defendant to prepare a defense.

■ Defendant argues the information was not clear in stating whether he was charged with practicing dentistry without a license, exceeding his authority as a dental assistant, or performing certain procedures without the supervision of a licensed dentist. When the information is read in its entirety, it is clear that defendant was adequately informed of the precise charge against him so that he could prepare a defense. Count I of the information alleges that defendant intentionally took impressions of the upper and lower jaws of Conover for the purpose of making dentures. Section 17 of the Act defines what acts constitute the practice of dentistry. (Ill. Rev. Stat. 1991, ch. 111, par. 2317.) Section 17(8) of the Act states that a person practices dentistry if he "takes impressions of the human *** jaws or performs any phase of any operation incident to the replacement of *** teeth *** by means of a *** denture or other appliance." (Ill. Rev. Stat. 1991, ch. 111, par. 2317(8).) In count I defendant was charged with the unlawful practice of dentistry by making impressions of teeth for the purpose of making dentures without a license.

Count II of the information charged that defendant practiced dentistry in that he performed an operation incident to the replacement of teeth by means of dentures. The information then sets out what acts of defendant constituted the practice of dentistry. This once again clearly advised defendant with what he was charged. Count III charged that defendant intentionally furnished prosthetic dentures to Conover. Section 17(9) of the Act states that such action is practicing dentistry. (Ill. Rev. Stat. 1991, ch. 111, par. 2317(9).) Once again, defendant was adequately informed of the charge against him and could prepare his defense from this information.

In *People v. Boyden* (1948), 400 Ill. 409, 81 N.E.2d 142, Boyden was found guilty by jury of violating the Act. Boyden was charged with taking an impression of the teeth or jaws of a certain individual when Boyden did not possess a license to practice dentistry. Boyden claimed that the information was fatally defective because it failed to negative the exceptions to the statute upon which the charge was based. Under section 17 of the Act, which defines acts which constitute the practice of dentistry, subsection (g) exempts certain conduct from the operation of the Act if done by a dental assistant. (Ill. Rev. Stat. 1991, ch. 111, par. 2317(g).) Defendant appears to claim that by

failing to allege the acts he committed were not done by a dental assistant, the information was defective. In *Boyden,* the Illinois Supreme Court wrote:

"With respect to this contention, it has been decided by this court that when the exception is not a part of the description of the offense, but merely withdraws certain acts or persons from the operation of the statute, it need not be negatived, and its position in the act is of no consequence." *Boyden,* 400 Ill. at 412, 81 N.E.2d at 143.

In *People v. Ellis* (1979), 71 Ill. App. 3d 719, 390 N.E.2d 583, the court held, in relation to a charge of driving while defendant's license was suspended:

"The general rule in Illinois is that where an act is made a crime and there are exceptions embraced in the enacting clause creating the offense which affect the description of that offense, the State must allege and prove that the accused does not come within the exception. In other words, where the exception is descriptive of the offense it must be negatived in order to charge the accused with the offense. On the other hand, if the exception rather than being a part of the description of the offense, merely withdraws certain acts or persons from the operation of the statute, it need not be negatived, and its position in the act, whether in the same section or another part of the act, is of no consequence. Such exceptions are generally matters of defense." *Ellis,* 71 Ill. App. 3d at 720-21, 390 N.E.2d at 585.

The offense here is described as practicing dentistry without a license: taking impressions of the human jaw or performing any phase of any operation incident to the replacement of teeth by a denture. The exception for dental assistants is not a part of the description of the offense and need not have been negatived in the complaint.

■ Defendant also argues that the information is insufficient because his conviction will not bar future prosecution for the same conduct. At oral argument, defense counsel agreed that there would be a bar to any future prosecution, if the record as a whole is scrutinized. As the supreme court has noted, "the time when an [information] defined the limits of jeopardy has passed and a prior prosecution on the same facts may be proved by resort to the record." (*People v. Jones* (1973), 53 Ill. 2d 460, 464, 292 N.E.2d 361, 363.) We find that the record demonstrates the charges in the information are sufficient so as to bar future prosecution.

Defendant next claims the State failed to prove him guilty beyond a reasonable doubt. On review, when considering the sufficiency of the evidence to support a conviction, " ' "[T]he relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) (*People v. Furby* (1990), 138 Ill. 2d 434, 455, 563 N.E.2d 421, 430, quoting *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) It is not the function of the reviewing court to retry the defendant when considering a challenge to the sufficiency of the evidence (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277); rather, the determinations of the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence are the responsibilities of the trier of fact. *People v. Tye* (1990), 141 Ill. 2d 1, 13, 565 N.E.2d 931, 937, *cert. denied* (1991), 502 U.S. 833, 116 L. Ed. 2d 81, 112 S. Ct. 112.

■ As to count I, defendant claims that under title 68, section 1220, appendix B, of the Illinois Administrative Code, he was authorized to take impressions for the purpose of making diagnostic casts. (68 Ill. Adm. Code § 1220 app. B(b)(13) (1991).) Dr. Dahman testified, however, that he could tell that the casts were made by defendant for the purpose of making dentures and not for the purpose of making diagnostic casts. Dr. Dahman testified as follows:

"Q. [By the prosecutor:] And can you tell from looking at those [casts] whether or not those particular ones are designed for diagnosis or are they—

A. They can't be a diagnosis because it's been treated for the construction of a denture.

Q. And you can tell that from examination?

A. Yes, I can.

Q. I'll take them back. And let me ask you specifically when you say its been treated for the making of a denture, looking I believe at defendant's exhibit [No.] 6, which is one part of it, is that the upper?

A. This is the upper ridge. Yes, it is.

Q. And what portions of it can you tell by looking are utilized or are different than would be on a diagnosis[-]type cast?

A. First place, we have what we call the post dam area in the back of the mouth of this ridge and we have a definite border showing all the muscle attachments here.

Q. That would not be present?

A. It would be very unusual.

***

Q. And that would not be necessary if you were using it to diagnose the gum or teeth?

A. There's no purpose in doing this to diagnose the model. A diagnostic model is something you look at, visualize, to inform yourself where you go from here."

The jury could have believed the testimony of Dr. Dahman that the casts were made for the purpose of preparing dentures, and not for the purpose of diagnosis. Defendant was proved guilty beyond a reasonable doubt of count I of the complaint.

Defendant finally argues that the conduct alleged in counts II and III, the placement of wax dentures in the mouth of Conover and the furnishing of dentures to Conover in exchange for United States currency, are not prohibited by the Act because he was a dental assistant supervised by a dentist. (See Ill. Rev. Stat. 1991, ch. 111, par. 2317(g).) Defendant's argument is that there was evidence that Dr. Brinkman was on the premises; therefore, there can be no conviction.

■ For defendant's actions to be exempted from the operation of this Act, Dr. Brinkman must have authorized any procedure performed by defendant, remained in the facility while the work was performed and approved the work so performed before dismissing a patient. (Ill. Rev. Stat. 1991, ch. 111, par. 2304(h).) There was testimony, however, that Dr. Brinkman did not authorize Conover's treatment, left the facility during treatment on the first occasion, was not present on the last two occasions, and did not approve the work performed by defendant before dismissing Conover. Dr. Brinkman's testimony did not rebut some of these allegations, *i.e.*, he testified he did not remember if Conover was still at the office when he left on the first occasion, and did not remember if he ever put his fingers in Conover's mouth. While both defendant and Dr. Brinkman testified that Dr. Brinkman was at the facility every time Conover was treated, this was controverted by the testimony of Conover and Seward.

From the evidence presented at trial, the jury could have found Conover's testimony and that of Seward more credible than that given by defendant and Dr. Brinkman. If the jury believed Conover's testimony that Dr. Brinkman was not on the premises, then it was entitled to find the acts described in the information and testified to at trial were violations of the Act. Alternatively, the jury could have believed that Brinkman was on the premises on all these occasions but had not authorized the procedures or approved the work so performed before dismissing Conover. This would also have been a violation of the Act. A rational trier of fact could have found defendant guilty of counts II and III.

While there was conflicting evidence in this case, there is ample

evidence to support the defendant's convictions as to all counts. We therefore affirm the judgment of the circuit court.

Affirmed.

KNECHT and GREEN, JJ., concur.