2020 IL App (1st) 190682-U

No. 1-19-0682

Order filed November 10, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 8021 |
| | ) | |
| MARLON BRANDON, | ) | Honorable |
| | ) | Kenneth J. Waddas, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for attempt armed robbery over his contention the State failed to prove his guilt beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Marlon Brandon was found guilty of two counts of attempt armed robbery (720 ILCS 5/8-4(a), 18-2(a)(1) (West 2018)), and sentenced to concurrent four-year prison terms. On appeal, defendant challenges the sufficiency of the evidence to sustain his convictions. We affirm.

¶ 3    The State charged defendant by information with two counts of attempt armed robbery, alleging that, on June 2, 2018, he raised a large glass bottle and demanded money from two victims, which constituted a substantial step toward the commission of armed robbery. The information did not identify either of the two victims but, prior to trial, the trial court granted the State's oral motion to amend the information to specify the victims were Douglas Lovette (count I) and Andrea Latham (count II).[1] The matter proceeded to a bench trial, at which the following evidence was presented.

¶ 4    Lovette testified that, around 9 p.m. on June 2, 2018, he and Latham exited a parking garage onto Plymouth Court, just north of Polk Street, and walked south on the west side of Plymouth, each carrying groceries. He observed defendant walking north on the east side of Plymouth. At that time, Lovette, Latham, and defendant were the only three people on the street.

¶ 5    Defendant started walking toward Lovette and Latham at "a direct 45 degree angle" at a "much more rapid pace" with a large glass liquor bottle raised above his head. Lovette believed the bottle to be Jack Daniel's based on its unique shape. As defendant approached them, he twice said, "give me your f*** money." Defendant appeared "angry" and "very serious" about getting their money. When asked how close defendant got to him and Latham, Lovette responded, "he was within three feet."

¶ 6    Lovette and Latham dropped their groceries, took a step back, then "moved to the right and ran away" to Polk. Lovette and Latham ran west on Polk, turned right onto Dearborn Street, and

---

[1] The trial transcript indicates the court's copy of the information was amended on its face to specify which count related to which victim. However, the record on appeal does not contain a copy of the information as amended.

headed toward several restaurants on the east side of the street. Lovette and Latham began warning patrons of those restaurants to "go inside" because someone had just tried to rob them.

¶ 7    Lovette called the police on his cell phone and they arrived within five minutes. While they waited for the police, Lovette saw defendant turn north from Polk onto Dearborn. Defendant walked north "along the same sidewalk that [they] were standing on," and "[e]verybody kind of backed off and cleared the sidewalk," as defendant "just walked through and kept walking" without interaction.

¶ 8    The police arrived, and Lovette gave them a description of defendant and his direction of travel. After the police located a person who fit the description, Lovette identified defendant as the person who had threatened him and demanded money.

¶ 9    On cross-examination, Lovette testified defendant did not push, grab, swing the bottle, or otherwise put hands on him. Nor did defendant "try to go into" Lovette's clothing. Latham screamed after defendant demanded their money and ran, and Lovette followed her. After running about 15 feet, Lovette looked back and saw defendant was not actively pursuing them but, rather, "was standing still or walking slowly."

¶ 10    The State also called Andrea Latham to testify, and her account was consistent with Lovette's testimony. She also identified defendant on the scene. On cross-examination, she confirmed that defendant had the bottle raised but did not swing at her and Lovette. He did not put his hands on or push Latham. Nor did defendant try "to go into [her] clothing." She also confirmed that defendant did not interact with or say anything to her the second time she saw him.

¶ 11    Officer Valerie Vicari testified that, after receiving a radio dispatch and a description of an individual, she and her partner encountered defendant sitting in a doorway on the 500 block of

South Dearborn. Defendant was drinking from a large glass bottle of Jack Daniel's. Vicari detained defendant because he matched the description of a man who had attempted an armed robbery. Vicari kept defendant in that location while Sergeant Vacek conducted a showup.

¶ 12    Detective James Kinsella testified that, after defendant was arrested, he and his partner advised defendant of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)), and defendant agreed to speak with them. Kinsella asked defendant if he knew why he was in custody, and defendant responded that he believed it was because he had stolen a bottle of liquor from a store at Roosevelt and Wabash. Kinsella also asked defendant if he had asked or demanded money from anyone, and defendant responded that he did and "was joking." When asked what he had specifically said to the victims, defendant stated he told the victim "you know[] what this is, give me that money." Defendant admitted he threatened the victim with a bottle of liquor, stating he "was hugging that bottle like [he] was going to hit them."

¶ 13    Defendant moved for a judgment of acquittal and finding of not guilty, which the court denied. Defendant elected not to present any evidence.

¶ 14    The court found defendant guilty of both counts of attempt armed robbery. Defendant filed an amended posttrial motion, which the court denied. The court sentenced defendant to concurrent four-year prison terms. Defendant thereafter filed a motion to reconsider sentence, which the court denied. This appeal followed.

¶ 15    On appeal, defendant challenges the sufficiency of the evidence to sustain his convictions for attempt armed robbery. Specifically, he argues the State failed to prove he acted with the specific intent to commit an armed robbery, as is required for the offense of attempt armed robbery.

¶ 16 When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact that the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of the decision. *Id.* However, the trier of fact need not disregard inferences which normally flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 17 A person commits the offense of attempt armed robbery when, with the intent to commit an armed robbery, he does any act that constitutes a substantial step toward the commission of an armed robbery. 720 ILCS 5/8-4(a) (West 2018). As charged here, a person commits an armed robbery when he knowingly takes property from another by the use of force or by threatening the imminent use of force, and while doing so, carries on or about his person or is otherwise armed with a dangerous weapon other than a firearm. *Id.* § 18-1(a), 18-2(a)(1).

¶ 18 As noted above, defendant argues the State failed to prove he acted with the specific intent to commit an armed robbery. An individual rarely express his intent to commit a criminal offense

and, therefore, intent is rarely proven by direct evidence. *People v. Lee*, 2015 IL App (1st) 132059, ¶ 53. Thus, the State may rely on circumstantial evidence to establish intent, which may be inferred from the conduct of the defendant and the surrounding circumstances. *People v. Terrell*, 99 Ill. 2d 427, 431-32 (1984).

¶ 19    Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we find a rational trier of fact could conclude defendant intended to commit an armed robbery. The evidence at trial showed that Lovette, Latham, and defendant were the only three present on Plymouth when defendant suddenly walked directly toward Lovette and Latham at a rapid pace. As defendant did so, he raised a large glass liquor bottle over his head and twice demanded their money, stating, "give me your f*** money," at which time he appeared "angry" and "very serious" about getting their money. Additionally, after his arrest, defendant admitted he told Lovette and Latham to "give [him] that money" and that he threatened them by holding the bottle as if he were going to hit them with it. From this evidence, the trial court rationally concluded that when defendant took the substantial step toward committing the armed robbery, *i.e.* raising the bottle above his head and demanding money from Lovette and Latham, he did so with the intent to commit an armed robbery. 720 ILCS 5/8-4(a), 18-2(a)(1) (West 2018).

¶ 20    Defendant nevertheless argues the State failed to prove he acted with the intent to take Lovette's and Latham's property where the evidence established he did not try to strike them with the bottle, touch or grab them, reach into their clothing, or pursue them after they ran away. However, by the point defendant raised the bottle above his head and demanded, in an "angry" and "very serious" tone, Lovette's and Latham's money, he had taken a substantial step toward

the commission of the armed robbery.[2] We evaluate defendant's intent at the time of that act (see *People v. Hollingsead*, 210 Ill. App. 3d 750, 764 (1991)), and whether the evidence supports a finding of intent. As noted above, we conclude the evidence supports such a finding.

¶ 21    Nor are we persuaded by the fact defendant walked past Lovette and Latham on Dearborn without interaction. The evidence provides an explanation as to why defendant did not make a second attempt to take their property. As defendant demanded Lovette's and Latham's money on Plymouth, they were the only three persons present but, when he encountered them again on Dearborn, there were other persons present, who would have been independent witnesses to the crime.

¶ 22    Further, we are not convinced by defendant's argument that his postarrest statements—that he believed he was being arrested for stealing a liquor bottle and that he was "joking" when he demanded money—"buttresses this conclusion." Defendant's after-the-fact declarations do not necessarily establish he lacked intent; an equally likely inference is that defendant was downplaying his actions to avoid culpability. See *Hollingsead*, 210 Ill. App. 3d at 764 (the defendant's statement that he was joking after the fact did not support finding he lacked intent). This is particularly true where the evidence showed defendant's demands for the victims' money were made in an "angry" and "very serious," and not a joking, manner.

¶ 23    We are not persuaded by defendant's reliance on *People v. Wright*, 286 Ill. App. 3d 456 (1996). *Wright* is wholly inapposite. In *Wright*, the issue on appeal was whether the State had offered any independent evidence to corroborate the defendant's confession under the *corpus*

---

[2] We note defendant does not argue the State's evidence was insufficient to support a finding he took an act which constituted a substantial step toward the commission of the offense. See 720 ILCS 5/8-4(a) (West 2018); Ill. S. Ct. R. 347(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited.").

*delicti* rule. *Id.* at 460. The court found the evidence at trial established only that an eyewitness saw three men fighting, that one man was shot, and that the others fled in a car, which did not tend to establish that the assailants intended to rob the victim. *Id.* at 461. Here, on the other hand, the State presented testimony from two victims that defendant raised a large glass bottle above his head and demanded their money.

¶ 24 Relying on *People v. Jones*, 184 Ill. App. 3d 412 (1989), and *People v. Thomas*, 127 Ill. App. 2d 444 (1970), defendant maintains that, because he did not take further steps to carry out the armed robbery despite his opportunity to do so, no rational factfinder could find he acted with the intent to commit an armed robbery. We disagree.

¶ 25 Both *Jones* and *Thomas* are distinguishable. In both cases, the defendants engaged in prolonged attacks on their victims and did not use their deadly weapons in a deadly manner. *Jones*, 184 Ill. App. 3d at 415-18; *Thomas*, 127 Ill. App. 2d at 446-48. Here, the evidence showed that, when defendant approached within three feet of Lovette and Latham, Lovette backed away from defendant, and he and Latham quickly ran away, thus thwarting any opportunity for defendant to take additional steps in furtherance of his attempt to commit an armed robbery.

¶ 26 As noted above, this court will reverse a defendant's conviction only where the evidence is so improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt. This is not such a case.

¶ 27 For the reasons stated, we affirm the trial court's judgment.

¶ 28 Affirmed.