# Illinois Official Reports

## Appellate Court

***People v. Davis*, 2017 IL App (1st) 142263**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT DAVIS, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-14-2263 |
| Filed | November 20, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-21450; the Hon. Maura Slattery Boyle, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Rachel M. Kindstrand, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Bryan Chinwuba, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Mikva concurred in the judgment and opinion. |

¶ 1 Following a bench trial, defendant Albert Davis was convicted of residential burglary and unlawful use of a weapon by a felon, and sentenced to two concurrent terms of seven years in prison. On appeal, defendant argues that (1) the State failed to prove beyond a reasonable doubt his guilt for residential burglary and unlawful use of a weapon by a felon, (2) he was denied his right to the effective assistance of counsel, and (3) he was denied his right to a fair trial when the court improperly admitted hearsay testimony from a police officer in violation of defendant's right of confrontation. Based on the record before us, we vacate defendant's conviction and sentence for residential burglary and affirm his conviction and sentence for unlawful use of a weapon by a felon.

¶ 2                                    BACKGROUND

¶ 3 Defendant was charged by indictment with home invasion, residential burglary, unlawful use of a weapon by a felon, aggravated use of a weapon, and obstruction of justice based on the events that occurred on November 23, 2011, in an apartment located at 3251 West Maypole Avenue in Chicago. The indictment alleged that defendant committed residential burglary "in that he, knowingly and without authority, entered the dwelling place of Angela Powell *** with the intent to commit therein a felony, to wit: obstruction of justice." The State charged defendant with a separate count of obstruction of justice, alleging that defendant "with intent to prevent the apprehension or obstruct the prosecution of Donta Hudson,[1] knowingly concealed physical evidence, to wit: [defendant] hid a handgun which had been possessed by Donta Hudson in the freezer of an apartment located at 3251 West Maypole Avenue."

¶ 4 The following evidence was presented at trial. Officer Lloyd Maxwell testified that, on November 23, 2011, he was on patrol by himself, driving a marked dash-camera-equipped squad car southbound on Kedzie Avenue, near the intersection of Chicago and Kedzie Avenue. While driving, he received a radio call, directing all units to respond to a man with a gun in the area of Kedzie Avenue and Walnut Street. The man was described as wearing a black coat and black jeans. Officer Maxwell immediately responded and headed southbound with his vehicle's siren activated. As Officer Maxwell approached Walnut Street, he saw a man matching that description walking down the street. When the officer pulled up to the man, later identified as co-defendant Donta Hudson, Hudson started running southbound on Kedzie Avenue.

¶ 5 Officer Maxwell followed Hudson in his vehicle. Hudson ran across a vacant lot, while Maxwell turned westbound into an alley off Kedzie Avenue. Maxwell turned his dashboard camera on and began recording the chase. Maxwell continued to follow Hudson for about 30 feet. As Officer Maxwell chased Hudson down the alley, Hudson's hand disappeared very briefly, then it came back up, and Maxwell saw that Hudson had a firearm in his hand. Officer Maxwell was about 10 to 15 feet away from Hudson when he jerked his hand twice, but the gun did not fire. Hudson continued to run westbound and then angled south through another vacant lot toward an apartment building with a large grassy courtyard. Officer Maxwell pulled up near an opening in a fence and chased Hudson on foot. Officer Maxwell ran to the side of

_____

[1]Hudson was charged separately and all parties agreed to consolidate the cases for trial. The court consolidated the cases, but granted a motion to sever "with regards to the evidence."

the building because he feared getting shot, and then proceeded toward the courtyard. At that point, Maxwell lost sight of Hudson for about three or four seconds. He then regained sight of Hudson, who was standing alone behind a stairwell. As Officer Maxwell looked in Hudson's direction, he saw the door to an apartment, about four or five feet away from Hudson, slam shut. Officer Maxwell arrested Hudson, but did not find a gun on his person.

¶ 6 Maxwell testified that several officers arrived at the scene. Officers Lopez, Zablocki, and Klein went to the apartment, located and recovered a semiautomatic handgun, and arrested defendant. Maxwell stated that he recognized the handgun as the same one Hudson pointed at him. He indicated that he never saw Hudson hand anything to defendant or interact with defendant in any way, and the first time he saw defendant was after he was arrested. The dashboard camera video was played in court, and Maxwell testified to the contents of the video.

¶ 7 Angela Powell testified that, on November 23, 2011, she lived at 3251 West Maypole Avenue, apartment B1, in Chicago with her three children. She appeared in court because she was subpoenaed to testify, and she tried to avoid testifying against defendant. On that day, at about 1:30 p.m., she was preparing for Thanksgiving. Her father, Larry Robertson; her nephew; and her boyfriend, Perry Reed, were in the apartment. While she was cooking, her boyfriend (nicknamed "Squirrel") was playing a videogame, while Robertson and her nephew were sitting on the couch. Robertson told her, "Bud just ran into your house. Something is going on." At the time, she did not know who Bud was, but she identified defendant in court as the person to whom Robertson was referring to. Powell indicated that she did not know defendant before that incident, although she had seen him around the neighborhood.

¶ 8 Powell came out of the kitchen and into the living room and saw defendant standing there. Powell asked defendant what he was doing in her residence. Defendant asked Powell to "put something up for [him]," which she understood to hide something for him. Powell told him that she would not put anything up for him because she did not want to lose her apartment. Powell lived in Section 8 housing. If she were caught with a gun without a Firearm Owner's Identification Card, she risked losing her apartment. She testified that she thought he was asking her to hide drugs or something illegal.

¶ 9 Powell testified that she told defendant to leave, but he refused, and he began walking around her apartment. Powell followed him around so that defendant could not put anything inside the bedrooms. Defendant took a videogame controller off the refrigerator, but did not have an opportunity to play because the police showed up. The police came to Powell's door, and she told them they could enter. While the police were outside her door, Powell did not know where defendant went. An officer told her that "somebody just went into your house that shot somebody." Powell pointed out defendant as the person who entered her apartment. Powell signed a form consenting to the search. The police placed defendant in handcuffs and started searching the apartment. During the search, the police found a gun in the freezer. Powell testified that she had not seen the gun before the police found it in the freezer, nor did she see defendant placing anything into her freezer.

¶ 10 On cross examination, Powell stated that she told Officer Zablocki that defendant was not her friend, that she only saw him around the block, and that she was scared when she found out he entered the apartment. She admitted that she never mentioned to the officers that defendant asked her to put something up for him, nor did she tell the officers that she asked defendant to leave.

¶ 11        Officer Lopez testified that he was on routine patrol with Officers Dolan and Zablocki near Chicago and Kedzie Avenue when he received a radio call of a person with a gun in the area of Kedzie Avenue and Walnut Street. He went to 3251 West Maypole Avenue, and saw Officer Maxwell arresting Hudson in the courtyard. He then went to apartment B1 of the same building and saw the door ajar. Powell, three children, and defendant were in the apartment. Lopez denied seeing any other adults in the apartment. Defendant was sitting on the couch in the living room with three children, and Powell pointed toward defendant. He testified that he and Officer Dolan escorted defendant out of Powell's residence. Lopez, along with the other officers, searched the apartment and found the gun in the freezer. He described the gun as a "blue semi-automatic 45 caliber handgun." Lopez showed the gun to Officer Maxwell and then inventoried the gun. The gun was loaded with six bullets in the magazine and one in the chamber. Lopez heard Officer Zablocki give defendant *Miranda* warnings. Defendant agreed to speak with the officers and told them that he was childhood friends with Hudson, that he observed Hudson "running into the courtyard, and that he observed him throw a gun. At which time he retrieved the handgun, went into the apartment, B1, and placed that handgun in the freezer." Defendant also told the officers that he was visiting a girlfriend, Tiesha Daniels, who lived in apartment D1, located about two doors south of apartment B1, just before he saw Hudson throw the gun. Over defense counsel's objection, Lopez testified that he went to apartment D1 and spoke with Daniels. She indicated that she did not know defendant.

¶ 12        Chicago police officer Joseph Keating, a forensic firearm examiner, examined the gun and was permitted to testify as a firearms expert. Keating identified the gun as a Gabilondo Llama .45-caliber semiautomatic pistol. The gun was introduced at trial as People's exhibit 1.

¶ 13        The parties stipulated that defendant had two prior convictions, one in a 2003 case for unlawful use of a weapon and one in 2006 for a possession of a controlled substance, and that he was on parole for the 2006 offense when the crime was committed.

¶ 14        Defendant called Officer Zablocki to testify in his defense. In relevant part, Zablocki testified that he was assigned to the case involving defendant and Hudson. He and Officer Lopez interviewed Powell at her residence. Powell told him that, at the time defendant entered her apartment, she was sitting in the front room with her three children. Zablocki stated that he saw children when he entered Powell's residence. He stated that Powell told him that she had never seen defendant before, and that after entering, defendant ran to the back of the apartment. Zablocki denied that Powell told him that she was in the kitchen cooking when defendant entered the apartment. Powell did not tell Zablocki that she followed defendant into different rooms of the apartment, or that defendant asked her to hide something for him.

¶ 15        Defendant also testified at trial. He consented to the Cook County public defender's request to allow a supervised law student, C.B., to assist in his representation pursuant to Illinois Supreme Court Rule 711 (eff. Feb. 10, 2006). At the beginning of defendant's testimony, C.B. elicited defendant's admission for various felony offenses, and that he served multiple prison sentences for those offenses. Prior to his arrest, defendant testified that he was living with his grandmother at 2839 West Wilcox Street in Chicago. Defendant testified that, on November 22, 2011, at around 10:30 p.m., he went to the apartment of his friend, Tiesha Daniels. Defendant spent the night at Daniels's house, which was located at 3251 West Maypole Avenue, apartment D1. Around 9 a.m. on November 23, 2011, he went to Powell's residence, apartment B1. He stated that Squirrel, Powell's boyfriend, invited him to the apartment. Defendant knew Squirrel because Powell knew defendant's girlfriend, and they

knew each other for about a month. Powell, Powell's father, her 12-year old nephew, and Squirrel were all inside the apartment. Defendant testified that he knew the other residents of the apartment and had been inside the apartment prior to that date.

¶ 16    That morning, defendant was playing videogames while Powell was cooking. He stated that he was there for about 45 minutes before the officers came into the unit. After they entered the residence, the officers told everyone to get on the floor. He was searched, handcuffed, and placed in a squad car. The officers ran his name and asked him if he had a record. The police informed defendant that he had an outstanding warrant for his arrest and took him to the police station.

¶ 17    Defendant testified that he did not know or see Hudson prior to his arrest. He also denied picking up a gun, having any contact with a gun, or seeing officers recover a gun from the apartment.

¶ 18    The trial court acquitted defendant of the charge of home invasion, but found him guilty of residential burglary, obstruction of justice, and felony possession of a weapon. The court merged the obstruction of justice count into the residential burglary count and sentenced defendant to two concurrent terms of seven years for residential burglary and unlawful possession of a weapon by a felon. Defendant's motions for a new trial and for reconsideration were denied. This appeal follows.

¶ 19                                   ANALYSIS
¶ 20                         Sufficiency of the Evidence Claim
¶ 21    Defendant argues on appeal that his convictions and sentence should be reversed because the State failed to prove beyond a reasonable doubt the elements required for both residential burglary and unlawful use of a weapon by a felon.

¶ 22    The State must prove each element of an offense beyond a reasonable doubt. *People v. Sams*, 2013 IL App (1st) 121431, ¶ 9. The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). It is not the reviewing court's function to retry the defendant. *People v. Betance-Lopez*, 2015 IL App (2d) 130521, ¶ 40. The trier of fact assesses the credibility of the witnesses, determines the appropriate weight of the testimony, and resolves conflicts and inconsistencies in the evidence. *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 21.

¶ 23                               Residential Burglary
¶ 24    Defendant claims that the State failed to prove beyond a reasonable doubt that he committed the residential burglary offense based on the predicate felony of obstruction of justice. Specifically, defendant argues that the State did not establish that defendant entered the apartment without authority or that defendant intended to prevent the police from apprehending Donta Hudson, or obstruct the prosecution of Hudson for a crime.

¶ 25    To prove residential burglary, the State must prove beyond a reasonable doubt that defendant (1) knowingly and without authority entered or knowingly and without authority remained within the dwelling place of another and (2) intended to commit therein a felony or theft. 720 ILCS 5/19-3(a) (West 2012); *People v. Maggette*, 195 Ill. 2d 336, 353 (2001).

¶ 26        To prove obstruction of justice, the State must prove beyond a reasonable doubt that defendant, with intent "to prevent the apprehension or obstruct the prosecution or defense of any person, *** knowingly commits any of the following acts: *** [d]estroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information." 720 ILCS 5/31-4(a)(1) (West 2012).

¶ 27        Defendant's conviction for residential burglary depends on whether the State proved beyond a reasonable doubt that defendant committed the underlying offense of obstruction of justice. Here, the State failed to establish the elements of the underlying felony. The obstruction of justice count charged defendant "with intent to prevent the apprehension or obstruct the prosecution of Donta Hudson, knowingly concealed physical evidence, to wit: [defendant] hid a handgun which had been possessed by Donta Hudson in the freezer of an apartment located at 3251 West Maypole Avenue." The State did not present any evidence that defendant intended to prevent Hudson's apprehension because Hudson was quickly located hiding under a stairwell after being chased and then arrested by Officer Maxwell. Nor is there evidence that defendant saw Hudson being chased by the police or that any officers saw where and how Hudson threw the gun. In order to sustain the charge, the State had to prove that defendant "knowingly concealed physical evidence" with the intent to prevent Hudson's investigation or prosecution.

¶ 28        Defendant argues that the State cannot just point to the act of hiding a gun in Powell's freezer as proof of obstruction of justice, but also has to show that defendant knew that Hudson had committed a crime. The statute requires proof that the defendant, with intent to obstruct justice, "knowingly concealed physical evidence." In order for the intent to obstruct requirement to be met, the State has to prove that defendant had knowledge of an investigation or prosecution that would generate "physical evidence." See *People v. Jenkings*, 2012 IL App (2d) 091168 (the court noted that giving false information to police is insufficient to sustain a conviction for obstruction of justice unless the State also shows that it was given with the intent to prevent prosecution of another and with knowledge that information was untrue).

¶ 29        Here, none of the State's witnesses ever saw defendant and Hudson interact, nor is defendant in any of the dash camera footage. There was no evidence presented that defendant witnessed Hudson fleeing from police or pointing a handgun at Officer Maxwell. None of the witnesses saw defendant holding or recovering a gun at any time. Defendant's admission to Officer Lopez does not establish that defendant was aware that Hudson was under investigation or was being prosecuted when defendant solely told Officer Lopez that he saw Hudson "running into the courtyard and observed him throw a gun." Defendant did not tell Officer Lopez that he saw Hudson being chased by police or that he saw Hudson pointing a gun at the officer. In other words, there was no evidence presented that defendant was aware of, or had knowledge of, Hudson's investigation or prosecution. Therefore, the State failed to establish the intent element of the obstruction of justice count.

¶ 30        The State dismisses this argument, claiming that "a reasonable inference based on defendant's actions show his intent to obstruct justice and his understanding that neither he, nor co-defendant was allowed to be in possession of the gun." But it appears that the State's case in proving the elements of this offense is mostly based on inferences and not based on facts supported by the record. *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 55 ("The State must present sufficient evidence from which an inference of knowledge can be made, and any

such inference must be based on established facts and not pyramided on intervening inferences.").

¶ 31 Furthermore, the trial court at sentencing noted "Mr. Davis, whether he knew or had known what Mr. Hudson had done, I don't know. What I do know is that the court did find Mr. Hudson handed him off the gun, Mr. Davis, of the belief he was doing his friend a service, entered the residence belonging to somebody else and put the gun in hiding." Contrary to the trial court's statement, we cannot speculate defendant's knowledge of Hudson's actions and whether he intended to conceal the gun to prevent Hudson's investigation or prosecution. Without facts to indicate defendant's knowledge of Hudson's running from police, we cannot jump to an inference that he intended to obstruct defendant's investigation when he recovered the gun and placed it in the freezer. Without the intent element, defendant's conviction for obstruction of justice cannot stand. Consequently, defendant's conviction for residential burglary fails as a matter of law, as it was predicated on the underlying felony of obstructing justice.

¶ 32 Although we vacate defendant's conviction for residential burglary based on the State's failure to establish the elements of the predicate felony, we will briefly address defendant's claim that the State failed to prove that he entered Powell's apartment "without authority." Defendant argues that the sole evidence that he entered Powell's apartment without authority comes from Powell's incredible testimony. Defendant claims it defies logic to infer that defendant would randomly enter the apartment when Powell's testimony indicated that her father, who was in the apartment, knew defendant. Defendant also points out that, while Powell did testify at trial that she told defendant to leave, she did not tell the police officers that she requested defendant to leave her apartment.

¶ 33 Ultimately, "[t]he trial judge, who saw and heard all the witnesses *** [is] in a much better position than are we to determine their credibility and the weight to be accorded their testimony." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009); see also *People v. Wittenmyer*, 151 Ill. 2d 175, 191-92 (1992); *People v. Woods*, 26 Ill. 2d 582, 585 (1963). Only a conviction based upon testimony that is "improbable, unconvincing, and contrary to human experience requires reversal." *People v. Vasquez*, 233 Ill. App. 3d 517, 527 (1992).

¶ 34 Here, Powell was the sole witness to defendant's unlawful entry to the apartment. She testified that she was cooking, preparing for Thanksgiving the next day. Her father, who was in her apartment, yelled "Bud just ran into our house. Something is going on." When she came out of the kitchen, she saw defendant, whom she did not know but had seen around the building, standing in the living room. She testified that she asked him "what are you doing in here?" Defendant told her to "put something up for me," but Powell refused. She thought that defendant wanted her to hide drugs or something illegal. She also testified that defendant would not leave her house despite her requests to do so.

¶ 35 However, Powell failed to tell police that she told defendant to leave and he refused and did not tell the officers that defendant asked her to put something up for him. Her testimony was also inconsistent when she testified that her children were not at home that day, while the officers indicated that the children were in the apartment. She never told the officers that she followed the defendant into different rooms to make sure he was not putting away something illegal. The police officers testified that defendant was sitting on the couch when they entered the apartment, while Powell testified that the only time that Powell was not with defendant was when the police were entering the apartment.

¶ 36    The trial court recognized these inconsistencies, but found that Powell's testimony was not substantially impeached and found her credible. It is the trial court's duty to resolve conflicts in the evidence and determine the credibility of the witnesses. *People v. Perry*, 91 Ill. App. 3d 988, 993 (1980). Based on the record, Powell's testimony, although inconsistent at times, was not "so improbable, or unsatisfactory as to raise a reasonable doubt of guilt." We find that the trial court's determination was not unreasonable.

¶ 37                              Unlawful Use of a Weapon by a Felon

¶ 38    Defendant argues next that the State failed to prove beyond a reasonable doubt that he was guilty of unlawful use or possession of a weapon by a felon, since the "only evidence" of his possession of the gun was his own admission. In order to sustain a conviction for unlawful use of a weapon by a felon, the State had to prove beyond a reasonable doubt that defendant knowingly possessed, on or about his person, any firearm after having been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2012).

¶ 39    "Knowing possession" can be either actual or constructive. *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002). Because defendant was not found in actual possession of the gun, the State had to prove that he constructively possessed it. See *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). To establish constructive possession, the State must prove that the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found. *Id.* "Evidence of constructive possession is often entirely circumstantial." (Internal quotation marks omitted.) *Id.* "Knowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found." *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011). "Control is established when a person has the 'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)).

¶ 40    Here, defendant was not found possessing the gun. But his admission, corroborated by the circumstantial evidence in the case, established both the knowledge and the control requirements for the constructive possession of the weapon. Officer Lopez testified regarding defendant's admission, which was given after he was read his constitutional rights. Lopez testified that defendant stated that he observed Hudson running into the courtyard and throwing a handgun. Defendant told Lopez that he "retrieved the gun, went into the apartment, B1, and placed that handgun in the freezer." Defendant's confession to Officer Lopez established that defendant had the knowledge and control over the weapon when he possessed it, and then placed it in the freezer.

¶ 41    Defendant argues that the State failed to prove the *corpus delicti* of the offense, as defendant's confession was not corroborated by the evidence at trial. Proof of guilt for a criminal offense may be divided conceptually into proof that an injury or loss occurred, that the cause of the loss was criminal in nature, and that the accused was the offender. *People v. Furby*, 138 Ill. 2d 434, 445-46 (1990). *Corpus delicti* has two components: proof of the occurrence of the injury or loss and causation by criminal conduct. *Id.* at 446. The identity of the accused as the offender, the ultimate issue, is not considered part of the *corpus delicti. Id.* Proof of *corpus delicti* may not rest exclusively on a defendant's extrajudicial confession, admission, or other statement. *Id.* The defendant's statement must be corroborated with

evidence independent of the confession which tends to show the commission of the offense. *People v. Lambert*, 104 Ill. 2d 375, 380 (1984).

¶ 42       Contrary to defendant's argument, defendant's admission that he possessed the gun was corroborated by the circumstantial evidence in the case that established the commission of the offense. Officer Maxwell testified to the events leading to the arrest of co-defendant Hudson. Maxwell saw Hudson pointing a gun at him, but after arresting him, Maxwell did not find a gun on Hudson's person. Officer Maxwell stated that he lost sight of Hudson for a few seconds, and then he saw the door of the apartment slum shut. Angela Powell testified that defendant asked her to "put something up for him," that she understood it to mean something illegal, and that she lost sight of defendant for a brief period of time before the officers got into her apartment. Officer Lopez testified that upon searching the apartment, he found the gun in the freezer. Powell testified that she had not seen the gun before the police found it in the freezer. Officer Maxwell testified that the gun recovered by Officer Lopez was the same gun that co-defendant Hudson pointed at him during the chase. Based on this record, defendant's confession regarding the commission of the unlawful use of a weapon offense was corroborated by the circumstantial evidence in the case and, along with defendant's stipulated other two convictions, established that defendant was guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon.

¶ 43                           Ineffective Assistance of Counsel Claim

¶ 44       Defendant contends that he was denied his right to effective assistance when defense counsel did not attempt to exclude all of his prior convictions in a motion *in limine* and instead allowed a law student to "front" all his prior convictions and prison sentences at the beginning of defendant's direct examination. Defendant testified that he was previously convicted of (1) unlawful use of a weapon in the case No. 03 CR 7960, for which he was sentenced to one year in prison; (2) two Class 4 possessions of a controlled substance under case No. 05 CR 18095 and 05 CR 204190, for which he was sentenced to two concurrent terms of two years in prison; (3) a Class 1 manufacture /delivery of controlled substance under case No. 06 CR 2341901, for which he was sentenced to four years; and (4) a Class 2 escape charge under case No. 161001, for which he was sentenced to two years to run concurrently with the sentence for the manufacture/delivery conviction.

¶ 45       To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, "a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

¶ 46       In accordance with *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Matters of trial strategy generally will not support a claim of ineffective assistance of counsel unless counsel failed to conduct any meaningful adversarial testing. *People v. Patterson*, 217 Ill. 2d 407, 441 (2005). "In recognition of the variety of factors that go into any determination of trial strategy, courts have held that such claims of

ineffective assistance of counsel must be judged on a circumstance-specific basis, viewed not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions on review." *People v. Fuller*, 205 Ill. 2d 308, 330-31 (2002).

¶ 47　　　The decision whether to file a pretrial motion is traditionally viewed as one of trial strategy. *People v. Little*, 322 Ill. App. 3d 607, 611 (2001). To overcome the presumption and prevail on a claim of ineffectiveness based on counsel's failure to file such a motion, the defendant must show, first, a reasonable probability that the motion would have been granted and, second, that the outcome of the trial would have been different if the motion had been granted.

¶ 48　　　Pursuant to *People v. Montgomery*, 47 Ill. 2d 510, 516 (1971), a prior conviction is admissible to attack a witness's credibility where (1) the prior crime was punishable by death or imprisonment for more than a year or involved dishonesty or a false statement, (2) the prior conviction is less than 10 years old or the witness was released from confinement within the last 10 years, and (3) the probative value of admitting the conviction outweighs any danger of unfair prejudice. *People v. Mullins*, 242 Ill. 2d 1, 14 (2011). The determination as to the admissibility of a conviction for impeachment purposes is within the trial court's discretion. *Id.* at 15. To decide, the courts conduct a balancing test where they consider, among other things, the nature of the prior conviction, the length of the witness's criminal record, the witness's age and circumstances, "and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." (Internal quotation marks omitted.) *Montgomery*, 47 Ill. 2d at 518.

¶ 49　　　Initially, we note that since defendant was indicted and tried for unlawful use or possession of a weapon, his two prior convictions for unlawful use of a weapon by a felon in case No. 03 CR 7960 and his possession of a controlled substance conviction in case No. 06 CR 2341901 were elements of the offense charged, and therefore admissible. Furthermore, we find that counsel's decision to elicit defendant's convictions in an effort to front them was just a matter of trial strategy. When defendants take the stand, they are subject to impeachment by proof of past convictions, which are relevant testimonial truthfulness. *People v. Pruitt*, 165 Ill. App. 3d 947, 951-52 (1988). The convictions would have passed the *Montgomery* test and would have been admissible. Since defendant failed to establish that counsel's failure to file a motion *in limine* was nothing more than a matter of trial strategy, his claim of infective assistance of counsel fails.

¶ 50　　　　　　　　　　　　Hearsay Evidence Claim

¶ 51　　　Defendant claims next that his right to a fair trial was denied when Officer Lopez was permitted to testify about an out-of-court statement made by a non-testifying witness. After speaking with defendant on the scene, Officer Lopez located defendant's girlfriend, Tiesha Daniels, in apartment D1 of the same building. Lopez testified, over defendant's hearsay objection, that Daniels "indicated she did not know anybody by the name of Albert Davis."

¶ 52　　　Defendant admits that although defense counsel objected at trial, counsel did not include the alleged error in defendant's posttrial motion. Defendant asks us to review the forfeited error under the plain error doctrine. Defendant also asks us to review the forfeited error on the basis that he was denied effective assistance of counsel as a result of his counsel's failure to preserve the error for review.

¶ 53　　　Under plain error review, we will grant relief to a defendant in either of two circumstances: (1) if the evidence is so closely balanced that the error alone threatened to tip the scales of

justice against the defendant or (2) if the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). Defendant asserts both prongs of the plain error doctrine. The defendant bears the burden of persuasion with respect to prejudice. *People v. Lewis*, 2015 IL App (1st) 130171, ¶ 31.

¶ 54    Defendant argues that the case boiled down to a credibility determination between the State's witnesses and defendant, pointing to the testimony of Powell and her inconsistent statements made to the police officers. The State concedes that the trial court erred when admitting the hearsay statement, but argues that the evidence at trial was not closely balanced and that the error was inconsequential to defendant's conviction.

¶ 55    We agree with the State. As discussed above, the trial court found Powell credible, and based on the record, we cannot say that the court's determination was unreasonable. Moreover, defendant confessed that he unlawfully possessed the gun for a brief period of time before placing it in Powell's freezer. Defendant's confession, the un-impeached testimony of the police officers, the testimony of Powell, and the physical evidence in the case established that defendant committed the offense of unlawful use of a weapon by a felon. Defendant's evidence consisted of his own self-serving testimony that he did not see or place a gun in the freezer. Based on the record, defendant's uncorroborated testimony did not closely balance the corroborated evidence presented by the State, and defendant's claim of first-prong plain error fails.

¶ 56    Defendant argues that the second-prong error of the plain error doctrine applies because he was denied his right to confrontation when Officer Lopez's testimony constituted testimonial hearsay. See *Davis v. Washington*, 547 U.S. 813, 822 (2006) (A testimonial statement is one where "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). But Daniels's statement was not made while "under interrogation." At a minimum, the term "testimonial" covers police interrogations as well as statements that are the result of other types of formal questioning where there was no opportunity for the defendant to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Officer Lopez and Daniels had a brief conversation, and there is no evidence that Officer Lopez inculpated Daniels of any crime or wrongdoing or that Officer Lopez made any mention of an ongoing criminal investigation against defendant. Accordingly, defendant's right to confrontation was not violated, and the second prong of the plain error doctrine does not save defendant's forfeiture.

¶ 57    Finally, defendant's claim of ineffective assistance of counsel for failing to preserve the error fails. To be entitled to relief for ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that he suffered prejudice as a result. *People v. Scott*, 2015 IL App (1st) 131503, ¶ 28. To satisfy the prejudice prong of an ineffective assistance of counsel claim, the defendant must show that, but for counsel's deficient performance, a reasonable probability exists that the result of the proceeding would have been different. *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 46.

¶ 58    Here, based on the evidence presented at trial, we cannot say that, but for the admission of Officer Lopez's hearsay statement, a reasonable probability existed that the outcome of defendant's trial would have been different. Notwithstanding Officer Lopez's testimony regarding defendant's relationship with Daniels, the evidence presented included Officer Lopez's un-impeached testimony that defendant admitted that he possessed the gun, as well as

the other corroborated evidence provided by the other officers and Powell. Defendant's conviction for residential burglary is vacated, and defendant failed to show that his conviction for unlawful use of weapon was affected by the admission of the hearsay statement.

¶ 59                                    CONCLUSION

¶ 60        Based on the foregoing, we vacate defendant's conviction and sentence for residential burglary and affirm defendant's conviction and sentence for unlawful use of a weapon by a felon.

¶ 61        Affirmed in part and reversed in part.