2021 IL App (1st) 192222-U

No. 1-19-2222

Order filed November 10, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 19 CR 41701 |
| | ) | |
| LONELL PRESIDENT, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for unlawful possession of a weapon by a felon where he was not prejudiced by his trial counsel's failure to file a motion to suppress and thus, his claim of ineffective assistance of counsel failed.

¶ 2    Following a bench trial, the trial court found defendant Lonell President guilty of unlawful possession of a weapon by a felon and subsequently sentenced him to six years' imprisonment. On

appeal, defendant contends that his trial counsel provided ineffective assistance by failing to file a motion to suppress certain evidence. For the reasons that follow, we affirm defendant's conviction.

¶ 3                                    I. BACKGROUND

¶ 4    On December 6, 2018, a circuit court judge issued a search warrant naming defendant and the entire first-floor residence of an apartment building located on West Jackson Boulevard in Chicago and authorizing the seizure of cocaine and any drug paraphernalia. Later that day, the Chicago police executed the search warrant and recovered, among other items, live ammunition. A grand jury subsequently indicted defendant with one count of unlawful possession of a weapon by a felon for allegedly possessing firearm ammunition after being previously convicted of a felony offense.

¶ 5    The case proceeded to a bench trial, where the State's evidence showed that, on December 6, 2018, Chicago Police Officer Ted Jozefczak was part of a team of officers that was going to execute a search warrant on the first-floor residence of an apartment building located on West Jackson Boulevard in Chicago. Before executing the warrant, Officer Jozefczak was part of a narcotics surveillance operation on West Lexington Street in Chicago, where the police were looking for defendant. During the surveillance, Officer Jozefczak observed defendant in the driver's seat of a blue Mazda along with a female in the passenger's seat and witnessed him engage in suspect narcotics transactions. As a result, Officer Jozefczak and his team detained defendant and the female, and the police searched him. One of the officers recovered defendant's driver's license, which listed his name, listed the address subject to the search warrant and had an issue date of April 2018. That officer also recovered "[i]nside the amount of $3,000" in cash from defendant. The police did not recover any firearms, ammunition or narcotics from him. Inside the blue Mazda, officers observed keys in the ignition and used those keys to drive the vehicle to the

police station to impound it. Officers then used those keys to enter the first-floor residence listed in the search warrant. When the police entered the residence, they encountered two children, who were approximately 13 and 9 years old, home alone.

¶ 6    Inside the residence, Officer Jozefczak observed that there were three bedrooms, including one bedroom secured with a padlock. All three bedrooms appeared to be in use, as all three had furniture and clothing. One of the officers used the keys from the Mazda to unlock the padlock and gain access to the secured bedroom. Inside that bedroom, the police observed narcotics, narcotics packaging, a scale and a multi-compartment wooden dresser that contained both men's and women's clothing. In the top left drawer of the dresser, officers found an Illinois Department of Corrections identification card that listed defendant's name and included a photograph of him. In the top right drawer of the dresser, officers found a State of Illinois identification card that listed defendant's name and included a photograph of him, an August 2, 2018, car repair bill that listed defendant's name and the address subject to the search warrant, and a box with 29 live rounds of ammunition. According to Officer Jozefczak, the police did not take fingerprints from the box of ammunition and defendant's DNA was never obtained from the box. Additionally, on the dining room table of the residence, officers found a letter from an insurance company that listed the address subject to the search warrant and "LD President." According to Officer Jozefczak, the driver's license recovered from defendant listed his middle name as Delmar. Officer Jozefczak, the evidence recovery officer that day, secured the evidence and inventoried each item. During the trial, the State played portions of the body-worn camera footage from Officer Jozefczak and entered the footage into evidence.

¶ 7    At the conclusion of the State's case, the parties stipulated that defendant previously had been convicted of manufacturing/delivery of a controlled substance, a felony offense, from a 2009 case.

¶ 8    Following the State's case, the defense did not present any evidence. The trial court subsequently rendered its verdict and initially determined that Officer Jozefczak testified credibly and consistently. The court observed that, under the facts of case, the State had to prove that defendant constructively possessed the ammunition, which required his knowledge of the ammunition as well the immediate and exclusive control over the area where the police found the ammunition.

¶ 9    Concerning the element of immediate and exclusive control, the trial court stated that the keys the police recovered from the blue Mazda unlocked the residence and the bedroom where the ammunition was found. The court remarked that defendant's possession of those keys showed he "controlled the house" and "the bedroom." Although the court noted that "there was some testimony that there was a female perhaps also using that room," it added there was "quite a bit of evidence connecting the defendant to that room." As such, the court concluded that defendant "[c]ertainly *** ha[d] immediate and exclusive control over that area." The court, however, observed that even if another person had immediate and exclusive control over the same area, that did not preclude the State from sustaining its burden. Nevertheless, the court remarked that there was no evidence that anyone other than defendant had immediate and exclusive control over that area, and, in particular, there was no evidence anyone else had a key to the bedroom. Concerning defendant's knowledge of the ammunition, the court asserted it could infer his knowledge from several pieces of evidence, including the proofs of residency. Consequently, the court found defendant guilty of unlawful possession of a weapon by a felon.

¶ 10    Defendant subsequently filed an unsuccessful motion for new trial, and the trial court sentenced him to six years' imprisonment. Thereafter, he appealed.

¶ 11                                    II. ANALYSIS

¶ 12    Defendant contends that his trial counsel provided ineffective assistance by failing to file a motion to suppress the evidence stemming from the police's seizure of the keys from the blue Mazda, which they then used to unlock various doors at his residence.

¶ 13    Both the United States Constitution and the Illinois Constitution guarantee a defendant the right to the effective assistance of counsel. U.S. Const., amend. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Moore*, 2020 IL 124538, ¶ 28. When a defendant claims that his counsel provided ineffective assistance, we review the allegation under the standards set forth by *Strickland v. Washington*, 466 U.S. 668 (1984). *Moore*, 2020 IL 124538, ¶ 28. Under *Strickland*, in order to prevail on a claim of ineffective assistance of counsel, the defendant must show that his counsel's performance was deficient and that deficiency prejudiced him. *People v. Domagala*, 2013 IL 113688, ¶ 36. More specifically, in the context of a claim of ineffective assistance of counsel for failing to file a motion to suppress, "the defendant must demonstrate both that the unargued suppression motion was meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Gayden*, 2020 IL 123505, ¶ 28. "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694). The defendant must demonstrate both prongs of the *Strickland* analysis to prevail on his claim of ineffective assistance of counsel. *Id.*

¶ 14    Defendant argues that, while the police had a search warrant for his residence, they did not have a search warrant that authorized the seizure of the keys from the impounded Mazda or for

any search to be conducted with the keys. Defendant acknowledges there are various exceptions to the warrant requirement, such as an automobile search under certain circumstances, a search incident to arrest and an inventory search, but he posits that none of them applied to the facts of his case.

¶ 15    Under the fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution, individuals have the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Pursuant to the limited-lockstep doctrine, we generally interpret the fourth amendment and article I, section 6, the same. *People v. Holmes*, 2017 IL 120407, ¶ 24. "Warrantless searches are *per se* unreasonable under the fourth amendment, subject to a few specific exceptions." *People v. Cregan*, 2014 IL 113600, ¶ 25. Some of those exceptions include the automobile exception (*People v. Hill*, 2020 IL 124595, ¶¶ 21-22), a search incident to arrest (*Cregan*, 2014 IL 113600, ¶ 25), and an inventory search of a vehicle that has been lawfully impounded (*People v. Gipson*, 203 Ill. 2d 298, 304 (2003)).

¶ 16    Although the State argues that, pursuant to any of these three warrant exceptions, the police were permitted to search the blue Mazda and seize the keys in the ignition, it also posits that the record is deficient to review defendant's claim of ineffective assistance of counsel. The State observes that, because his arrest and the subsequent inventory search of the car were not challenged in the trial court, it presented no evidence regarding the appropriateness of the officers' search of the vehicle and necessarily the trial court made no factual determinations of such appropriateness. Thus, the State asserts that the record contains insufficient evidence to determine whether a motion to suppress would have been granted, and, accordingly, whether trial counsel was ineffective for not filing one. See *Gayden*, 2020 IL 123505, ¶¶ 29, 36 (when the record in a case "does not contain sufficient information concerning the circumstances of [a] defendant's arrest from which we could

determine whether a motion to suppress would have been meritorious or whether defendant was prejudiced by trial counsel's failure to file a motion to suppress," the appellate court should decline to address the claim).

¶ 17    We recognize that the record in this case is not as developed as it could be regarding the fourth amendment issue, but regardless of the merit of defendant's fourth amendment claims, he suffered no prejudice from his counsel's failure to file a motion to suppress. See *People v. Johnson*, 2021 IL 126291, ¶ 53 (remarking that "if it is easier to dispose of an ineffective-assistance claim on the ground that it lacks a showing of sufficient prejudice, a court may proceed directly to *Strickland*'s prejudice prong and need not determine whether counsel's performance was deficient"). We therefore may dispose of defendant's claim based on a lack of prejudice notwithstanding the alleged insufficiency of the record to determine whether the trial court would have granted a motion to suppress. See *Gayden*, 2020 IL 123505, ¶¶ 29, 36.

¶ 18    As defendant acknowledges, the police had a lawful search warrant naming him and his residence, which authorized the police to search anywhere in his residence for cocaine and drug paraphernalia. As such, defendant concedes that the officers would have discovered the ammunition and his proofs of residency inside the bedroom during the execution of the warrant. In order to prove defendant guilty of unlawful possession of a weapon by a felon, the State had to prove that he knowingly possessed firearm ammunition after previously being convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018); *People v. Davis*, 2017 IL App (1st) 142263, ¶ 38. As defendant stipulated to his prior felony conviction during trial, the only element at issue was whether he knowingly possessed firearm ammunition. A defendant can knowingly possess firearm ammunition either through actual possession or constructive possession. *Davis*, 2017 IL App (1st) 142263, ¶ 39. As the trial court observed in rendering its verdict, because defendant did not actually

possess the firearm ammunition, the State had to show he constructively possessed the ammunition. See *id.* "To establish constructive possession, the State must prove that the defendant (1) had knowledge of the presence of the [ammunition] and (2) exercised immediate and exclusive control over the area where the [ammunition] was found." *Id.* The State generally proves constructive possession through circumstantial evidence. *Id.*

¶ 19     In this case, even without the evidence stemming from the police's seizure of the keys found in the blue Mazda, there was strong evidence that defendant knowingly possessed the firearm ammunition. On whether defendant exercised immediate and exclusive control over the area where the police found the ammunition, the State proves control when a person has the "intent and capability to maintain control and dominion" over an item, even if he lacks personal present possession over it. *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). Indeed, "[t]he defendant's control over the location where weapons are found gives rise to an inference that he possessed the weapons." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Evidence that a defendant resides in a location where contraband is discovered establishes the requisite level of control to prove constructive possession. *Id.* Evidence of residency may be shown through identifications absent other indicia showing that the defendant has moved (*People v. Loggins*, 2019 IL App (1st) 160482, ¶ 50), bills (*People v. Terrell*, 2017 IL App (1st) 142726, ¶ 19) and clothing in the area where the contraband was found. *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999).

¶ 20     When finding that defendant exercised immediate and exclusive control over the area where the police found the ammunition, the trial court highlighted the keys recovered from the blue Mazda and the police using those keys to enter the residence and secured bedroom. But the court also observed there was "quite a bit of evidence connecting" defendant to the bedroom. Although not specifically referenced by the court, the police found the live ammunition in top right

drawer of a dresser in that bedroom. And in that same drawer, the police found a State of Illinois identification bearing defendant's name and photograph, and a four-month old car repair bill listing defendant's name and the address subject to the search warrant. In the adjacent dresser drawer, the police found an Illinois Department of Corrections identification bearing defendant's name and photograph. These proofs of residency demonstrate that defendant exercised immediate and exclusive control over not only the bedroom, but the very dresser, where the police found the ammunition. See *Loggins*, 2019 IL App (1st) 160482, ¶ 50; *Terrell*, 2017 IL App (1st), ¶ 19. Additionally, the very fact that defendant had personal effects in a bedroom secured by a padlock shows that he exercised immediate and exclusive control over the bedroom, as a locked bedroom indicates that others do not have access to the room.

¶ 21 Moreover, the police found male and female clothing in the dresser, which is further evidence demonstrating defendant's immediate and exclusive control over the area where the police found the ammunition. See *Cunningham*, 309 Ill. App. 3d at 828. Even though there was some evidence that a female possibly resided in the bedroom by virtue of the female clothing, that did not prevent defendant from still being able to maintain immediate and exclusive control over the room, as the court noted. See *People v. Tates*, 2016 IL App (1st) 140619, ¶ 25. Based on the proofs of residency and clothing being in the same dresser as the live ammunition, including some proofs of residency in the very same drawer as the ammunition, the State sufficiently proved the defendant's immediate and exclusive control over the area where the police found the ammunition without needing to reference any evidence stemming from the seizure of the keys.

¶ 22 Turning to whether defendant had knowledge of the presence of the ammunition, when contraband is discovered in a residence under the defendant's control, "it may be inferred that he had the requisite knowledge and possession, absent other facts and circumstances which might

create a reasonable doubt as to defendant's guilt." *People v. Bui*, 381 Ill. App. 3d 397, 419 (2008). Indeed, the trial court found that it could infer defendant's knowledge of the ammunition from the proofs of residency. It strains credulity that defendant could be unaware of ammunition that was found in the very same dresser drawer as his State of Illinois identification and a recent car repair bill of his. As such, the State sufficiently proved that defendant had knowledge of the presence of the ammunition without needing to reference any evidence stemming from the seizure of the keys.

¶ 23    In sum, the strength of the State's evidence was strong even without any of the evidence stemming from the seizure of the keys in the blue Mazda. Because of this, defendant has not demonstrated that a reasonable probability exists that the outcome of his trial would have been different had this evidence been suppressed. As such, we do not need to determine whether a motion to suppress would have been successful in this case. See *Johnson*, 2021 IL 126291, ¶ 53. And because defendant cannot demonstrate he was prejudiced by his counsel's failure to file a motion to suppress, he cannot prevail on his claim of ineffective assistance of counsel. *Simpson*, 2015 IL 116512, ¶ 35.

¶ 24                         III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm defendant's conviction.

¶ 26    Affirmed.